## MULLAN v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 330. Argued and submitted April 21, 1891. — Decided May 11, 1891.

When the commander-in-chief of a squadron, not in the waters of the United States, convenes a court martial to try an officer attached to the squadron, more than half of whose members are juniors in rank to the accused, the courts of the United States will assume, when his action in this respect is attacked collaterally, and nothing to the contrary appears on the face of the order convening the court, that he properly exercised his discretion, and that the trial of the accused by such a court could not be avoided without inconvenience to the service.

The President has power by and with the advice and consent of the Senate to displace an officer in the army or navy by the appointment of another person in his place.

*Blake* v. *United States,* 103 U. S. 227, affirmed and followed.

ON the 18th of February, 1883, the United States steamer Ashuelot — in charge of the appellant as Commander in the United States Navy, and attached to the Asiatic squadron under Rear Admiral Clitz — ran upon a rock and was lost, with eleven of the crew. The Navy Department received, March 16, 1883, from the Rear Admiral a message sent by cable from Hong-Kong, in these words: "Inquiry finished; Mullan culpable; others exonerated; court martial impossible; directions requested." In response to this message the department, on the 19th of March, 1883, issued orders to Captains William P. McCann and Joseph N. Miller and Master Samuel C. Lemly to proceed to Yokohama, Japan, and report to the commander-in-chief of the Asiatic station. These orders were issued to enable that officer to organize a court martial to try Mullan for the loss of the Ashuelot.

Subsequently, April 30, 1883, Rear Admiral Pierce Crosby, who had then assumed command of the United States squadron on the Asiatic station, ordered a general court martial to convene on board the flag-ship Richmond, at Hong-Kong, on the 2d of May, 1883, for the trial of Mullan. The court was

composed of the following persons, any five of whom were empowered to act: Captain William P. McCann, Captain J. N. Miller, Lieutenant Commanders G. B. D. Gleddin and E. S. Houston, Lieutenants J. J. Hunker, S. M. Ackley, and B. Noyes. In the order convening the court it was stated that "no other officers than those named can be assembled without manifest injury to the service."

When the court convened, the appellant filed the following protest: "I object and protest against the organization of the court as a whole, and for the following reasons: In case of an officer to be tried by a court martial, article 39 of the articles for the government of the United States Navy provides that in no case, where it can be avoided without injury to the service, shall more than one-half, exclusive of the president, be junior to the officer to be tried. In time of war it might frequently occur that officers, particularly those of the higher grades, could not be detached from duty and ordered as members of a court without great injury to the service; but in time of peace, when large numbers of officers are either off duty or performing such duty as for the necessary time might be done by a subordinate, no such emergency can possibly arise. It cannot be claimed by any one that a sufficient number of officers senior to myself could not have been ordered upon this court without injury to the service. I have no desire to reflect on any individual member of this court; but since my professional reputation, my personal character and the prosperity and happiness of my family are at stake, I must emphatically protest against being tried by a court, five of whose seven members are junior to myself."

At the request of the appellant the court below found that at the time of the organization of the court there were twelve naval officers superior in rank to him, on waiting orders in the city of Washington; and that Medical Inspector Stephen D. Kennedy, of the Navy, was tried in November, 1883, on board the Hartford, at Panama, by a court composed of two commodores, two captains, one medical director, one medical inspector and one commander; all of those officers being detailed for that special duty, and directed to proceed from New York

to Panama, because deemed necessary by the Navy Department in view of the fact, of which it was informed by Rear Admiral Hughes, that there were not in the squadron under his command the requisite number of officers of sufficient rank to organize a court martial for the trial of Medical Inspector Kennedy.

The charges against appellant, for the trial of which the court at Hong-Kong was convened, were: drunkenness on duty; improperly hazarding the vessel under his command, in consequence of which it was run upon a rock and lost; and neglect of duty. Being found guilty, he was sentenced to dismissal from the service. The sentence was approved and confirmed by the President on the 6th of July, 1883.

In December, 1883, the President nominated to the Senate "Lieutenant Commander Francis M. Green to be a commander in the Navy, from the 7th of July, 1883, *vice* Commanders T. H. Eastman, retired, and Horace E. Mullan, dismissed." The Senate, January 18, 1884, advised and consented to this appointment of Green, from the latter date, "*vice* Commanders T. H. Eastman, retired, and Horace E. Mullan, dismissed," and on the 23d of January, 1884, the President commissioned him to be a commander in the Navy from the 7th of July, 1883.

The present action was brought by Mullan on the 3d of June, 1885, to recover pay as commander in the Navy since the 6th of July, 1883. It proceeds upon the ground that this action of the court martial was illegal and void, and that, notwithstanding its sentence of dismissal, he was at the time of bringing this action, and had been since the 6th of July, 1883, a commander in the Navy, legally entitled to the compensation provided by law.

The Court of Claims found the above facts, and, holding as a conclusion of law that appellant was not entitled to recover, dismissed his petition. 23 C. Cl. 34.

*Mr. John Goode* and *Mr. Eppa Hunton* for appellant.

*Mr. Assistant Attorney General Maury* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

The principal contention of the appellant is, that the court martial convened under the order of Rear Admiral Crosby was an illegal body, without jurisdiction to try him. This contention is based upon the fact that of the seven members of the court participating in the trial, five were his juniors in rank. Our attention has been called to the clause of the 5th section of the army appropriation act of July 13, 1866, 14 Stat. 92, c. 176, preserved in § 1229 of the Revised Statutes providing that " no officer in the military or naval service shall, in time of peace, be dismissed from service, except upon and in pursuance of the sentence of a court martial to that effect or in commutation thereof." And article 36, for the government of the Navy, Rev. Stat. § 1624, reads: " No officer shall be dismissed from the naval service except by the order of the President or by sentence of a general court martial; and in time of peace no officer shall be dismissed except in pursuance of the sentence of a general court martial or in mitigation thereof." Article 39 of section 1624 of the Revised Statutes provides: " A general court martial shall consist of not more than thirteen nor less than five commissioned officers as members; and as many officers, not exceeding thirteen, as can be convened without injury to the service, shall be summoned on every such court. But in no case where it can be avoided without injury to the service, shall more than one-half, exclusive of the President, be junior to the officer to be tried. The senior officer shall always preside, and the others shall take place according to their rank."

These provisions are cited by the appellant in support of his contention that the court martial at Hong-Kong was an illegal tribunal. He insists that it appears from the record before us that a court consisting of not less than five commissioned officers — more than one-half of them, exclusive of the President, being his seniors in rank — could have been convened without injury to the service, and therefore the court which tried him was unauthorized by the statute. This is supposed to be established by the fact that, at the time of the

organization of the court at Hong-Kong, there were twelve naval officers, superior in rank to the appellant, on waiting orders in the city of Washington. But this does not show that any of those officers could at that time have been sent from the national capital to the Asiatic station "without injury to the service." The public interests may have required them to be held at Washington for assignment to other duty than service upon the court martial to be convened for the trial of the appellant. Of that the Navy Department was necessarily the judge, and its discretion could not be controlled nor its action reviewed by the courts. The presence of those officers in Washington, on waiting orders, at the time the court martial at Hong-Kong was ordered, must be conclusively presumed to have been required by the Navy Department, and, therefore, by the exigencies of the naval service. Some stress is laid upon the circumstance, stated in the findings of the court below, that certain officers were detailed by the Navy Department, in November, 1883, to proceed from New York to Panama for service upon a court martial, ordered for the trial of a medical inspector; such detail being deemed necessary by reason of the fact that in the squadron to which the inspector was attached there were not "the requisite number of officers of sufficient rank to organize a court martial" to try him. But that only tends to show that a court martial, a majority of whose members, exclusive of the President, were senior in rank to the inspector could, at that time, be convened "without injury to the service." It does not show what were the requirements of the service at the time the court martial was ordered to be held at Hong-Kong in May, 1883, for the trial of the appellant. It results that there is no ground for the contention that the record shows that the organization of a court, with more than one-half of its members junior in rank to appellant, could have been avoided without injury to the service.

The statute permits an officer of the navy to be tried by a court-martial, more than one-half of whose members are his juniors in rank, if it cannot be avoided without injury to the service. Rear Admiral Crosby, being commander-in-chief

of a squadron not operating or stationed "in the waters of the United States," had the power, without express author-ity from the President, to convene a general court martial for the trial of the appellant. Rev. Stat. § 1624, Art. 38. That is not disputed. Whether the interests of the service admitted of a postponement of his trial until a court could be organized of which at least one-half of its members, exclusive of the President, would be his seniors in rank, or whether the interests of the service required a prompt trial, upon the charges preferred, by such officers as could be then assigned to that duty by the commander-in-chief of the squad-ron, were matters committed by the statute to the determi-nation of that officer. And the courts must assume — nothing to the contrary appearing upon the face of the order conven-ing the court — that the discretion conferred upon him was properly exercised, and, therefore, that the trial of the appel-lant by a court, the majority of whom were his juniors in rank, could not be avoided "without injury to the service." "When-ever," this court said in *Martin* v. *Mott*, 12 Wheat. 19, 31, "a statute gives a discretionary power to any person, to be ex-ercised by him upon his own opinion of certain facts, it is a sound rule of construction, that the statute constitutes him the sole and exclusive judge of the existence of those facts."

The result of these views is that the sentence of the court martial, and its approval by the President, cannot be regarded as void.

But, independently of the question as to the legal character of the court martial, there is another ground upon which the affirmance of the judgment of the Court of Claims can rest. In *Blake* v. *United States*, 103 U. S. 227, 235, it was held, upon full consideration, that the fifth section of the army appropriation act of July 13, 1866, c. 176, 14 Stat. 92, above quoted, meant, "that whereas, under the act of July 17, 1862, as well as before its passage, the President alone was author-ized to dismiss an army or naval officer from the service for any cause which, in his judgment, either rendered such officer unsuitable for, or whose dismissal would promote, the public service, he alone shall not, thereafter, in time of peace, exercise

such power of dismissal, except in pursuance of a court martial sentence to that effect or in commutation thereof." Again, in the same case: " Our conclusion is that there was no purpose, by the fifth section of the act of July 13, 1866, to withdraw from the President the power, with the advice and consent of the Senate, to supersede an officer in the military or naval service by the appointment of some one in his place. If the power of the President and Senate, in this regard, could be constitutionally subjected to restrictions by statute, (as to which we express no opinion,) it is sufficient for the present case to say that Congress did not intend by that section to impose them. It is, in substance and effect, nothing more than a declaration that the power theretofore exercised by the President, without the concurrence of the Senate, of summarily dismissing or discharging officers of the Army or Navy, whenever in his judgment the interest of the service required it to be done, shall not exist, or be exercised, *in time of peace,* except in pursuance of the sentence of a court martial, or in commutation thereof. There was, as we think, no intention to deny or restrict the power of the President, by and with the advice and consent of the Senate, to displace them by the appointment of others in their places."

These principles were affirmed in the subsequent case of *Keyes* v. *United States,* 109 U. S. 336, 339.

In view of these adjudications, the judgment below may be sustained without reference to the inquiry whether the court martial that tried Mullan was legally constituted, or whether he ceased to be an officer of the Navy in consequence of the approval of the sentence by the President. The fact appears that Francis M. Green, under the appointment of the President, by and with the advice and consent of the Senate, was commissioned commander in place of Eastman retired, and Mullan dismissed. The circumstance that Green was appointed in place of one commander retired, and another dismissed, is explained by the naval appropriation act of August 5, 1882, c. 391, 22 Stat. 284, 286, requiring a reduction of the number of officers in certain grades of the Navy, including the grade of commander. Green was appointed by the President,

*by and with the advice and consent of the Senate*, and was commissioned, in place of Mullan. This, under the above decisions, to which we adhere, put Mullan out of the Navy, even if the proceedings of the court martial had been void.

*Judgment affirmed.*