**CARTER v. WOODRING, Secretary of War.** *

No. 6904.

United States Court of Appeals for the District of Columbia.

Decided Aug. 2, 1937.

Oberlin M. Carter, pro se.

Leslie C. Garnett, U. S. Atty., and Howard Boyd, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and GRONER, Associate Justices.

*Writ of certiorari denied 58 S.Ct. 283, 82 L.Ed. —.

MARTIN, Chief Justice.

In this case the plaintiff, Oberlin M. Carter, filed a bill in equity in the District Court of the United States for the District of Columbia against the defendant Harry H. Woodring, as Secretary of War of the United States.

The plaintiff in his bill states that on December 2, 1897, he was a Captain in the Corps of Engineers, of the United States Army, and from the year 1884 until July, 1897, he was stationed by order of the Chief of Engineers of the Army at Savannah, Ga., in charge of certain harbor improvements then being constructed by the United States at Savannah Harbor and Cumberland Sound, Georgia and Florida, under the provisions of acts of Congress; that during all the time that the plaintiff was in charge of such improvement he caused the work in said district to be performed strictly in accordance with the laws of the United States and with various contracts with contractors providing for the performance of the work; that from time to time as moneys became due to the contractors he issued vouchers to them for the exact amount lawfully due to them under their contracts and for no more; and in every respect served honestly, faithfully, and uprightly in the performance of his duties.

Plaintiff further states that in October, 1896, plaintiff let two certain contracts with the Atlantic Contracting Company for said improvements strictly in accordance with law and with the approval of his superior officers; that afterwards when these contracts were partially performed plaintiff was relieved of duty as supervising engineer in said district and became Military Attaché at the American Embassy in London, England, and also Army Engineer member of the Nicaragua Canal Commission.

Plaintiff avers that he performed his duties as engineer in charge of said improvements so successfully that the same was generally regarded as a triumph of engineering skill and brought universal approval of all engineers to the plaintiff who continued to enjoy the confidence of his superior officers and a reputation for skill in his profession and for honor among his fellow citizens.

Plaintiff alleges that after he was relieved of work as Supervising Engineer aforesaid, the work of completing the improvement was assigned by the Chief of the Corps of Engineers to a successor who for

some reason unknown to plaintiff was possessed of animosity and enmity toward plaintiff, and who conspiring with other officers secretly manufactured charges of dishonesty and improper conduct on the part of the plaintiff in the conduct of said work; that as a result of this conspiracy charges were preferred against plaintiff under army orders and a general court-martial was convened at Savannah, Ga., pursuant to the order of the Chief of Engineers of the United States Army of January 12, 1898, to hear and decide such charges. The court-martial consisted of thirteen officers of the United States Army named in the bill, composed of one General, who was presiding judge of the court, one Colonel, two Lieutenant Colonels, five Majors, and four Captains of the United States Army.

Plaintiff avers that the presiding judge of the court was an enemy of plaintiff and through the influence of plaintiff's successor and his coconspirators many members thereof were appointed who were unfriendly to plaintiff; and certain of the members of the court-martial were instructed by their superior officers to secure his conviction regardless of the evidence which might be produced before the court martial; that the Assistant Judge Advocate General of the United States Army was assigned as Judge Advocate to present the charges against plaintiff before the court martial; that in violation of his oath he secretely conspired with the presiding officer of the court martial to secure the conviction of plaintiff and in pursuance of said conspiracy the private papers of plaintiff were seized and presented to said court-martial; that court records were abstracted from the United States Engineer's office so that the same could not be procured by plaintiff as proof to contradict the false charges made against plaintiff; that witnesses were by threats and coercion of said conspirators prevented from appearing and testifying on behalf of plaintiff; that evidence known to be false by the Judge Advocate and the presiding judge. was offered against plaintiff; that as the result of such conspiracy plaintiff did not at the hands of the court-martial receive a fair trial, nor was the finding of the court-martial made in accordance with the law or rules and regulations of the United States Army; that the charges presented against plaintiff before said court-martial consisted of four charges relating to disconnected matters involved in the program of the work upon said improvements, all designed and tending to prejudice any impartial members of the court-martial; that the finding of the court-martial was a result of said conspiracy to the effect that the plaintiff was guilty of all the charges presented against him except upon three specifications thereof; that by the finding of the court-martial the plaintiff was sentenced to be dismissed from the service of the United States, to suffer a fine of $5,000, to be confined at hard labor for five years at such place as should be directed, and the crime and punishment published in the newspapers in and about the station and in the state from which the plaintiff came or where he then usually resided.

Plaintiff states that after the coming in of the findings of the court-martial the President of the United States sought the advice of two distinguished lawyers who reported to him against the approval of the conviction; that the then Attorney General of the United States, after proposing that he should make an investigation to which plaintiff objected unless he should be permitted to introduce evidence at the hearing thereof, finally after hearing the reports of detectives and accountants which were procured by the conspirators who had preferred the charges against the plaintiff, the Attorney General presented to the President of the United States his recommendation to the effect that in violation of the statute of the United States and in conspiracy with the Atlantic Contracting Company and other parties, the plaintiff had fraudulently advertised for bids and had permitted to be put into the construction of the work therein provided for, certain mattreses and stone not contracted for in said contracts, and had, on the 6th day of July, 1897, caused to be paid out of the moneys of the United States $230,749.90 and $345,000 to the contractors therefor, plaintiff avers that he was not and is not guilty of any of the charges made against him; that on September 29, 1899, Elihu Root, then Secretary of War, signed an order to the effect that the findings of the court-martial against plaintiff were approved except as to certain specifications; and that the sentence imposed by the court-martial upon the plaintiff was approved.

Plaintiff avers that no right of appeal or review exists on his part from said sentence which as approved by the Secretary of War remains upon the records of the army of the United States against plaintiff. Plaintiff avers that in execution of said

sentence he was imprisoned for five years in the penitentiary at Fort Leavenworth, Kan.; that he has been deprived of his property and exposed to great odium and scorn by his fellow citizens; that he is without remedy except in a court of equity.

He prays that a decree may be entered setting aside the finding and sentence of the court-martial, and that the Secretary of War be ordered to cancel the approval of the proceedings and sentence of the court-martial, which would restore plaintiff to his rank as Captain in the Corps of Engineers; and that the court may enter a decree that the finding and sentence of the court-martial was void and procured by fraud, and that the approval of the same by the Secretary of War was obtained by the wrongful conduct of the then Attorney General; and plaintiff claims such other relief as equity may require in the premises.

The defendant below filed a motion to dismiss the foregoing bill of compaint upon the grounds, among others, that: (1) It failed to state a cause of action, cognizable by a civil court, and (2) that the cause of action, if any, was barred by laches.

A final decree was entered by the lower court sustaining the motion and dismissing the cause. From this decree the present appeal was taken.

We are of the opinion that the decree of the lower court must be affirmed.

It is provided by article 1, § 8 cl. 14, of the Constitution that Congress shall have the power "To make Rules for the Government and Regulation of the land and naval Forces." This grant empowers Congress to provide for the trial and punishment of military and naval offenses, Dynes v. Hoover, 20 How. (61 U.S.) 65, 15 L.Ed. 838; Ex parte Reed, 100 U.S. 13, 21, 25 L.Ed. 538, and it is the established rule that courts-martial thus authorized by Congress derive their validity from the foregoing provisions of the Constitution and are entirely independent of the judicial system authorized in article 3 of the Constitution. The civil courts may inquire only as to the jurisdiction of the military courts and should this be found lacking the proceedings may be declared a nullity, but the test is jurisdiction, and when the court-martial possesses this qualification its sentence is conclusive and beyond review for alleged errors occurring in the course of a trial.

In the present case the court-martial whose sentence is now in question possessed jurisdiction over the subject-matter involved therein, and over the person of the accused. It was convened by officers empowered by statute to call it. The officers who were commanded to sit upon it were of the class authorized to detail for that purpose. The court thus constituted was vested with power to try the person and offense charged and its sentence was within the provisions of the statute.

The complaints contained in the appellant's bill when properly interpreted do not challenge the jurisdiction of the court-martial to sit in the case nor the validity of its sentence. It is true that appellant charges that false testimony was admitted and relied upon at the trial, that he was the victim of personal prejudice and malice held against him by those preferring the charges as well as some of the members of the court-martial. These matters, however relate to the proceedings before the court-martial and do not relate to the constitution of that body itself. The fact that prejudice may intervene or that perjury may be committed by witnesses or that mistakes may occur concerning the rules of procedure governing the case does not deprive the court, if otherwise qualified, of its jurisdiction to try a case. It is accordingly clear from the appellant's statement of his case that the civil courts have no authority to review the proceedings of the court-martial in this case by granting the appellant the relief he seeks, and the other grounds of the defendant's motion to dismiss the cause need not be discussed.

This litigation has had a long and devious history in the courts. See In re Carter (C.C.) 97 F. 496; Rose v. Roberts (C.C.A.) 99 F. 948; Carter v. Roberts, 176 U.S. 684, 20 S.Ct. 1026, 44 L.Ed. 638; Id., 177 U.S. 496, 20 S.Ct. 713, 44 L.Ed. 861; Carter v. McClaughry (C.C.) 105 F. 614; Id., 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236.

The decree of the lower court is affirmed.

Affirmed.