## HENRY v. HODGES.

District Court, S. D. New York.
March 29, 1948.

Emil Morosini, of New York City, Robert N. Gorman, of Cincinnati, Ohio, and Henry C. Ruttiger, of Newark, N. J., for petitioner.

John F. X. McGohey, U. S. Atty., of New York City (John F. Ryan, Asst. U. S. Atty., and Bertran Schwartz, Office of Army Judge Advocate, both of New York City, of counsel), for respondent.

RYAN, District Judge.

Petitioner, by a writ of habeas corpus, seeks to have declared null and void the proceedings and resulting conviction by a general court-martial of the United States Army, which was convened at Regensburg, Germany, on May 21 and 28, and on June 3 and 4, 1947, pursuant to paragraph 13, Special Orders No. 112, Headquarters United States Constabulary, APO 46, US Army, May 16, 1947, as amended.

Petitioner enlisted in the Army of the United States on December 17, 1942. He served as an enlisted man until September 14, 1943 when he received a commission as a second lieutenant. He had a record of honorable, faithful and creditable service until his conviction at which time he held the rank of captain.

It was charged that the petitioner had violated the 93rd Article of War, 10 U.S.C. § 1565, 10 U.S.C.A. § 1565, and the 96th Article of War, 10 U.S.C.A. § 1568.

The specifications as to the charge of the violation of the 93rd Article of War were that petitioner, while a first lieutenant, in Company D, Third Military Government Regiment at Waldmunchen, Germany, during the latter part of January, 1946 feloniously embezzled by fraudulently converting to his own use approximately 115 kilograms of silver bullion of a value of over $50, which had been entrusted to him by the United States Government by virtue of his position as a Military Government officer.

The specifications as to the violation of the 96th Article of War charged that while still an officer in the same command and at the same place, on or about May 20, 1946, he wrongfully and unlawfully authorized the use of government transportation to a German civilian employee of the United States Military Government to his own use and benefit.

The general court-martial found the petitioner not guilty of the charge and specifications under the latter violation, and guilty of the charge and specifications alleging a violation of the 93rd Article of War. Upon this conviction, the court sentenced the petitioner to be dishonorably dismissed from service, to forfeit all pay and allowances due and to become due and to be confined at hard labor for three years. The sentence was approved by the Commanding General, but after review by the Department of The Army in Washington pursuant to the provisions of Article of War 48, 10 U.S.C.A. § 1519, the Secretary of the Army approved only so much of the findings of guilty of the charge and specifications as charged that the petitioner fraudulently converted to his own use the silver bullion in violation of Article of War 96. The sentence was confirmed but the period of confinement was reduced to one year. By virtue of this sentence as modified and its execution, the petitioner

ceased to be an officer of the United States Army and is now confined in a military prison at Fort Jay, New York, within this district.

The petitioner challenges the jurisdiction of the General Court-Martial at which he was tried, convicted and sentenced. He alleges that the provisions of Article of War 70 and 80, 10 U.S.C.A. §§ 1542, 1552, were not complied with prior to trial and that this failure to comply with these provisions rendered the General Court-Martial without jurisdiction and trial and sentence null and void.

The petitioner urges that the court was without jurisdiction for the following reasons:

"1. Petitioner did not receive the benefit of a 'thorough and impartial investigation' without which no charge can be referred to a general court-martial for trial under Article of War 70 (10 U.S.C.A. § 1542);

"2. The pre-trial investigator failed to call witnesses requested by petitioner in violation of petitioner's rights as guaranteed by Article of War 70, and it does not appear that the petitioner was given an opportunity to cross examine witnesses or otherwise avail himself of the rights given him by this statute or Article of War;

"3. The court was improperly constituted and the provisions of Article of War 8 were violated (Title 10, Section 1479 U.S. Code, 10 U.S.C.A. § 1479) in that the officer designated as the law member was not a member of the Judge Advocate General's Department although a member of such department was available for the purpose."

 The power of the court in this proceeding is limited. It may examine the record only to determine whether or not the detention complained of is lawful. United States v. Spar, 2 Cir., 1945, 149 F.2d 881. The only errors, if they exist, which it may consider are those affecting the jurisdiction of the court-martial or the fixing of a penalty beyond statutory provisions. The district court has no general supervisory or corrective powers over court-martial proceedings. That power is lodged by Congress with the military courts and review boards, where military jurisdiction attaches, and not with the civil courts.

In re Yamashita, 1945, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499; United States v. Crystal, 2 Cir., 1943, 131 F.2d 576, certiorari denied 319 U.S. 755, 63 S.Ct. 1164, 87 L.Ed. 1708, rehearing denied 319 U.S. 783, 63 S.Ct. 1173, 87 L.Ed. 1727.

That portion of Article of War 70 applicable to the question involved reads as follows:

"No charge will be referred to a general court martial for trial until after a thorough and impartial investigation thereof shall have been made. This investigation will include inquiries as to the truth of the matter set forth in said charges, form of charges, and what disposition of the case should be made in the interest of justice and discipline. At such investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available and to present anything he may desire in his own behalf either in defense or mitigation, and the investigating officer shall examine available witnesses requested by the accused. If the charges are forwarded after such investigation, they shall be accompanied by a statement of the substance of the testimony taken on both sides."

Passing upon the merits of petitioner's first objection we are not met with any issue of fact.

It is conceded by stipulation that the writ of habeas corpus and the general court-martial records shall constitute the entire record on this proceeding. An examination of the court-martial record shows that when the matter of the shortage of silver bullion first arose, Lt. Col. H., the commanding officer of Company D, Third Military Government Regiment by verbal order detailed, assigned and directed one Capt. M. to make a general precharge survey and investigation. This assignment of Captain M. was made during the latter part of the month of September, 1946, and it appears that he did conduct a general survey of the entire matter. The details of this survey were set forth in a written report, signed by Capt. M., dated October 10, 1946 and consisting of eight typewritten pages. This report is found in the court-martial record

as Prosecution's Exhibit 14, and is part of the record.

An examination of the report shows that Capt. M. interrogated eleven German civilians whose names are set forth in the report. He also took the testimony of petitioner and of a former sergeant of the Military Government of the United States Army then in Germany. After detailing at length the facts as he believed them to exist as the result of his investigation, Capt. M. in his report stated his conclusions. Among them it is important to note the following:

"* * * 2. A large number of witnesses have been interviewed in connection with this case. From a review of their testimony, it can be seen that there are certain discrepancies in regards to sizes and quantities.

\* \* \* \* \* \*

"4. From the testimony and evidence presented the following general conclusions are drawn:

"a. Silver plate was illegally cut and taken by several MG Officers.

\* \* \* \* \* \*

"c. Capt. Henry appears to be the main figure in the affair, although it is apparent that Lt. * * * shared to a great extent in the spoils. While Capt. Henry admits to having only a few small articles made, the evidence bills from the firms of Pleyer and Lees indicate that, in fact, there was a substantial amount of various articles produced. * * *"

After this report had been made by Capt. M., the commanding officer of the Third Military Government Regiment prepared the charges upon which petitioner was tried; and then appointed Capt. M. as the investigating officer pursuant to the provisions of Article of War 70 to conduct the required pre-trial investigation.

Such procedure has in the past been the subject of adverse comment and criticism by the Secretary of War. In the Digest of Opinions of The Judge Advocate General of The Army, 1912–1940 (p. 293), the following is recorded:

"Charges:

\* \* \* \* \* \*

"(2) Investigation by accuser—Several records of trial by general court-martial received in the office of the Judge Advocate General indicated that some confusion existed in the service as to the requirements of A.W. 70 regarding the 'thorough and impartial investigation' of charges. The validity of the sentence in each of the cases covered by those records was brought into question by reason of the fact that the investigation conducted under the second paragraph of A.W. 70 had been made by the officer signing the charges under the oath prescribed by the first paragraph of that article. The course of administration thus disclosed, involving action by one and the same officer as accuser and an investigating officer in the same proceeding, met with the disapproval of the Secretary of War.

"Accordingly, under date of January 15, 1929, instructions were communicated, by order of the Secretary of War, to each officer exercising general court-martial jurisdiction, directing that steps be taken to make certain that the investigation required by the second paragraph of A.W. 70 be made by an officer other than the signer of the charge under investigation. 240.45, Jan. 10, 1929.

"While the investigation of charges required by A.W. 70 should be impartial, and conducted by an officer other than the accuser if such officer is available, the matter is procedural in its nature and failure to comply literally with all the provisions of paragraphs 30–35, inclusive M.C.M., 1928, will not defeat the jurisdiction of the court. C.M. 206697 (1937)."

█ It is with this observation as to the nature of the requirements of "A.W. 70," that we cannot agree. The requirement that there be a thorough and impartial pre-trial investigation is specifically ordained by Act of Congress. The failure to accord an accused this right appears to be jurisdictional rather than procedural.

The Judge Advocate General has also stated:

"* * * The provisions of A.W. 70 with reference to investigating charges are mandatory and there must be a substantial compliance therewith before charges can legally be referred for trial. A court-martial is without jurisdiction to try an ac-

cused upon charges referred to it for trial without having first been investigated in substantial compliance with the provisions of A.W. 70 and, in such case, the court-martial proceedings are void ab initio. C.M. 161728 (1924)." Digest of Opinions, supra (at p. 292).

These principles as laid down by the Board of Review concerning the jurisdictional nature of the pre-trial investigation, required under Article of War 70 in C.M. 161728 (1924), Clark, above quoted, were followed by the Board in C.M. 182225 Keller and C.M. 183183, Claybaugh. It was not until 1943 that the Board of Review in C.M. 229477 (1943), Floyd, writing of these holdings said:

"Although these cases have not been expressly .overruled, opinions on analogous points indicate that the first three paragraphs of Article of War 70 have come to. be regarded as directory only in all respects and that failure to comply therewith is not fatal error. The following cases represent examples of this view: Sec. 376(3), Dig.Op.J.A.G., 1912–1940 (failure to swear witness not prejudicial error where facts admitted or otherwise proved); CM 172002, Nickerson (failure to sign or swear to charges); CM 201563, Davis (report of investigation by telephone instead of in writing); CM 202511, Godfrey (no reinvestigation after staff judge advocate had amended charges by changing the article of war and the name of the owner of the stolen property); CM 206697, Brown (reference of charges to accuser for investigation). The Nickerson case contains the following apt language:

" 'The provisions of A.W. 70 requiring the charges and specifications to be sworn to, was intended for the benefit of the accused in order that he might not be subjected to frivolous or malicious prosecution and if he did not object to the irregularity and the accusation is sustained by the proof, the fact that the charge and specifications were not sworn to would not in itself injuriously affect any of the substantial rights of the accused' (CM 172002. Nickerson).

"The reasoning in the Nickerson case applies with equal logic to the present case.

"The foregoing cases, together with those holding that failure to make the re-quired references to staff judge advocates is not fatal error, justify the conclusion that the investigation required by Article of War 70 is not mandatory, and that its omission does not constitute fatal error. This conclusion coincides with the apparent Congressional intention in enacting the statute, which was to prevent 'unnecessary and unjust trials' based 'on flimsy evidence without a prima facie case' (Hearings before the Senate Committee on Military Affairs on S.B. 5320, 65th Cong., 3rd Sess., p. 108; Hearings before the Subcommittee, Senate Committee on Military Affairs, on S.B. 64, 66th Cong., 1st Sess., pp. 101, 1390; Proceedings, Report of Special War Department Board on Courts-Martial and Their Procedure, July 17, 1919, p. 5). The requirements are wholly procedural and do not affect the processes of courts-martial in their determination of guilt or innocence. Although the language of a statute is mandatory, it may be regarded as directory if the legislative purpose can best be carried out by such a construction (59 C.J. 1072). Moreover, the Supreme Court has held that the provisions of the Fourth, Fifth and Sixth Amendments to the Constitution, which are mandatory in form and some of which involve procedural matters, are not limitations upon the jurisdiction of the trial court and may be waived (see, for example, Trono v. United States, 199 U.S. 521, 26 S.Ct. 121, 50 L.Ed. 292, 4 Ann.Cas. 773; Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500, Ann.Cas.1913C, 1138; Segurola v. United States, 275 U.S. 106, 48 S.Ct. 77, 72 L.Ed. 186; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357). In United States v. Gill, D.C., 55 F.2d 1399, a United States District Court has expressed the view that indictment by a grand jury (a. procedure basically similar to investigation of charges) may be waived. In reaching this conclusion the court applied the reasoning of the Supreme Court in Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263, a case pertaining to waiver of trial by jury in criminal cases, guaranteed by section 2, Article III of the Constitution. In that case the Supreme Court said, among other things:

" 'The record of English and colonial jurisprudence antedating the Constitution will be searched in vain for evidence that trial by jury in criminal cases was regarded as a part of the structure of government, as distinguished from a right or privilege of the accused. On the contrary, it uniformly was regarded as a valuable privilege bestowed upon the person accused of crime for the purpose of safeguarding him against the oppressive power of the King and the arbitrary or partial judgment of the court. Thus, Blackstone, who held trial by jury both in civil and criminal cases in such esteem that he called it "the glory of the English law," nevertheless looked upon it as a "privilege," albeit "the most transcendent privilege which any subject can enjoy."

\* \* \* \* \* \*

" 'In the light of the foregoing it is reasonable to conclude that the framers of the Constitution simply were intent upon preserving the right of trial by jury primarily for the protection of the accused.

\* \* \* \* \* \*

" 'Upon this view of the constitutional provisions we conclude that article 3, § 2, is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so, is to convert a privilege into an imperative requirement' (Patton v. United States, 281 U.S. 276, at pages 296–298, 50 S.Ct. at page 257.

"For the foregoing reasons it is the opinion of the Board of Review that the provisions of Article of War 70 requiring investigation of the charges before trial are not jurisdictional, and that under the circumstances of the present case failure to comply with them did not injuriously affect the substantial rights of accused."

The rationale of the Floyd decision, supra, seems to be based upon the statement by the Judge Advocate in the Brown case, supra, that,

·"If \* \* \* a thorough and impartial investigation is not had, [and] nevertheless the charges are referred for trial, a fair trial is had which results in conviction, and the sentence is approved; all that the accused has suffered is injuria sine damno,

a technical wrong which did him no harm. The law ought not to admit that a guilty man is harmed if tried, convicted, and sentenced; and, if he has had a fair trial and has been convicted, the law, if it does not stultify itself, must assume him to have been guilty. The case therefore falls within the exact language of A.W. 37. \* \* \* It was no part of the purpose of the authors of A.W. 70 to prevent the trial, conviction, and punishment of a guilty man."

To this we cannot subscribe. It cannot fairly be said that an accused has suffered an injury without harm and that a purely technical wrong has been committed, which does no harm, when the one who is in fact the accuser is appointed to conduct a "thorough and impartial investigation." Especially is this not so, when the accuser functions, not only as the investigator, but later appears on the trial as a witness for the prosecution and gives material, vital and damaging testimony concerning the accused and evidence of an admission allegedly made by the accused to him. Nor, are we inclined to think that no injury was done the petitioner by the appointment of his accuser as the pre-trial investigator, because of the fact that there appears from a reading of the cold record of the trial sufficient testimony, if believed, to establish the guilt of the petitioner beyond a reasonable doubt.

The pre-trial investigation prescribed by Article of War 70 was intended not only to prevent unnecessary trials of charges founded upon insufficient evidence and to afford protection to an accused from such charges, but also to grant to him, restricted as he is by his military service, an opportunity of probing into the facts of the charge and to uncover evidence, if available, which might lead to his ultimate exculpation, both by direct evidence and testimony of witnesses who could give affirmative proof as to his innocence, as well as testimony which might affect the credibility of the witnesses upon whom the prosecution depended to establish proof of guilt.

In civil cases, criminal prosecutions are generally instituted as the result of police investigation which is followed by an arrest. This, in most instances, is followed by a

hearing before a committing magistrate who holds or discharges the accused; if he holds him for action by a Grand Jury the facts are presented to this body. All of this results in either the exoneration of the accused or in the presentation of a true bill against him followed by a trial before a court and petit jury. The functions of the investigating officer, as contemplated by Article of War 70 are those ordinarily performed both by the civil prosecuting officer and the grand jury. These functions are described in The Soldier and the Law by McCoomsey and Edwards (at p. 155) as being "similar in many respects to a grand jury investigation in which the grand jury determines whether a man is to be tried." Surely it would be a travesty of justice to have the complainant-accuser sit on a grand jury, testify before it as a witness in support of the complaint and then vote for and return a true bill. The duties performed by the investigating officer are highly important to the accused. He must be strictly impartial, since he represents both the accused and the prosecution. It is his obligation to gather and record facts which would be admissible evidence in the court-martial trial and to do this he must investigate. It is upon his recommendation that the commanding officer relies in determining whether there is to be a trial at all, and, if so, for what offense and by what type of court. Can it be fairly said that one who assumes the duties of an investigator is not disqualified by reason of the fact that he has previously expressed in a written report his opinion as to the guilt of the accused, when such report has been made the basis of the very charge he is investigating? Can it be argued that one who is to give testimony on behalf of the prosecution (and who subsequently does so, as to the alleged admissions of the accused) has an open mind on the matter, so that his efforts will be directed along investigational channels which might lead as well to the acquittal of the accused as to his condemnation? Can we reasonably hope that such investigator will pursue interrogation and examination of proposed witnesses with the same zealous and unbiased effort as one who has had no previous contact with the case? The answer to these questions is obvious. It is manifestly impossible for him to conduct the thorough and impartial investigation contemplated and directed by Act of Congress.

Nor can we brush these objections aside with the comment that no matter who might have been appointed to investigate the result would have been the same. We do not know this to be so. Experience teaches us that many a man first suspected of being guilty of a crime is proved entirely innocent after a painstaking and impartial investigation. We cannot conclude that such might not have been the case here; but even if we could the accused was entitled, as a matter of law, to a thorough and impartial investigation and this was denied him when Capt. M. was appointed the investigating officer.

Counsel for petitioner, at the court-martial, duly and promptly objected to the alleged pre-trial investigation and to the designation of Capt. M. as the pre-trial investigator. The following is found in the court-martial record (at p. 18):

"The defense objects to this court further considering this case, in that Article of War 70 has been violated; that Captain M. who filed a report of investigation accusing Captain Henry of the offenses for which he is now charged which predated the filing of these charges by fifteen days, is not an impartial investigating officer as is required by Article of War 70. In judicial precedent for this motion, I refer to—may I read a portion of the Article of War which is pertinent here, the second paragraph:

" 'No charge will be referred to a general court martial for trial until after a thorough and impartial investigation thereof shall have been made.'

"The pre-trial investigating officer, as I say, reported prior to the origin of these charges, prior to their being filed, that Captain Henry was guilty of the offense for which he is now to be tried."

And he further stated (at p. 19):

"When I was first appointed, or rather made available, as counsel in this case—before the USFET regulation about civilians—I was directed by OMGB to appear for Captain Henry. At that time I went to Col. M. at the 3rd Military Government

Regiment, in December, 1946, and told him that this in my opinion was a violation and my suggestion was to have the charges withdrawn, refiled, re-investigated, and run the thing legally. This isn't a shyster trick to try to draw things out to the last minute. This was raised in December.

\* \* \* \* \* \*

"I have to wait until the case comes to trial, but I don't want the court to believe that I am trying to stall things to the last minute. This question was raised the minute I came into the picture, and that was last December."

After this objection had been properly made on the record, the trial proceeded and the first witness was sworn. He was the petitioner, the accused, Captain Henry. He testified under oath that he asked Capt. M. to call four officers on his behalf during the pre-trial investigation (p. 21 court-martial record); and on this point he gave detailed evidence (p. 22):

"One was Lieutenant Colonel E. S.; then there was Lieutenant Colonel R. S.; the third was Major J. H., and the fourth was 1st Lieutenant R. C."

And, as to the availability of two of these witnesses he testified, on cross-examination (at p. 22), that:

"Lieutenant Colonel S. was then present, and Lieutenant Colonel S. I believe, was then present. Col S. was then, I believe, Safety Officer for Third Army at Heidelberg, and Lt Col S. was Commanding Officer of the 25th Constabulary Squadron."

The other two witnesses requested were in California. Petitioner swore that Capt. M. refused to call Lt. Colonel S. expressing his reason for not doing so as follows (at p. 24):

"He told me it would be up to me to call him myself, and he said, 'Buddy that's T. S.'"

That petitioner felt that the testimony of Lt. Colonel S. would be material he left no doubt of, when interrogated (at p. 24):

"President: The court would like to ask one question. Did the information you expected to obtain from these four officers— these four people—have anything to do with the charges as now preferred against you?

"Witness: Yes, sir."

Captain M. was then called as a witness by the prosecution. On direct examination, Captain M. categorically denied under oath that the petitioner had asked him to request or procure the presence of any of the mentioned officers (at p. 28). On cross-examination he repeated this (at p. 31):

"To the best of my recollection, Captain Henry did not ask for any witnesses to be called."

In his report as pre-trial investigating officer, Capt. M. (in paragraph "2") stated that "Accused did not desire to cross-examine any witness." But, the pre-trial investigation report contains the following:

"For the defense, the accused desired to make no statement. However the accused has indicated that he would call as witnesses for the defense:

"1) Major J. C. H.

"2) 1st Lt. R. C. C.

both of whom have been discharged and are now in the States.
Also:

"1) Lt. Col. S. former CO, 3rd Battalion 358th Inf., 90th Inf. Div.

"2) Former S 3 of 3rd Battalion, 358th Infantry."

█ However that may be, an issue of fact was presented here by the conflicting testimony of the petitioner and Captain M. It was resolved by the court-martial against the petitioner, and that finding was approved by the Board of Review and the military authorities. We may not inquire into the merits of this finding. In re Yamashita, supra.

We come now to a consideration of petitioner's contention that the court-martial was improperly constituted in violation of Article of War 8, 10 U.S.C.A. § 1479, which provides:

"General Courts martial. \* \* \*

"The authority appointing a general court martial shall detail as one of the members thereof a law member, who shall be an officer of the Judge Advocate General's Department, except that when an of-

ficer of that department is not available for the purpose the appointing authority shall detail instead an officer of some other branch of the service selected by the appointing authority as specially qualified to perform the duties of law member. * * *"

Colonel C. K., a cavalry officer, was designated both as President and law member of the general court-martial. He was challenged by counsel for the petitioner on the ground that he was not a member of the Judge Advocate General's Department, and that members of that department were available. (Court-martial record, p. 11 et seq.)

The record shows that at least two members of the Judge Advocate General's Department may have been available—the trial judge advocate and the officer who was appointed as defense counsel for another defendant. Counsel's challenge was overruled, the court-martial holding that it was the prerogative of the appointing officer to determine whether a law member was available.

Article of War 8 was adopted so that at least one member of the court would be familiar with the rules of evidence and court procedure and that trial principles be observed.

This question arose in two previous cases, which were passed upon by the Board of Review—in CM 231963 Hatteberg (18 BR 349) and CM 209988 Cromwell (9 BR 169), the opinions written held in substance that the discretion lodged in the appointing authority in designating an officer other than a member of the Judge Advocate General's Department, as a law member of a court, is conclusive upon the question of availability.

■ Whether or not the Judge Advocate General's Department officer is available as a law member is unquestionably a matter, which lies for determination, in the sound discretion of the officer who appoints the court-martial. Article of War 8, in this respect, is clearly directory to the officer appointing the court. The opinion of Mr. Justice Story, speaking for the court in Martin v. Mott, 12 Wheat 19, at page 35, 25 U.S. 19, at page 35, 6 L.Ed. 537, is most applicable:

"* * * it is very clear that the act is merely directory to the officer appointing the court, and that his decision * * *, being in a matter submitted to his sound discretion, must be conclusive."

We have, heretofore, concluded that the judgment of conviction cannot stand by reason of the jurisdictional defects arising out of the total failure to comply with the mandatory provisions of Article of War 70.

■ We are not impressed with the argument that military exigencies make it necessary to regard the express mandatory provision of Article of War 70, for a thorough and impartial pre-trial investigation, as a purely procedural matter, and that this be done because of the necessity for a prompt and speedy determination of the guilt or innocence of an accused upon charges once they are filed. While we recognize that prompt action is commendable on the part of all prosecuting officers charged with the administration of justice, it is essential that the rights of an accused be protected and fully secured to him. Speed is both praiseworthy and desirable, but justice is essential. Justice is achieved only when an accused is given fully of the rights guaranteed to him by the laws of our country; here, this was not done.

Writ sustained.