**SMITH v. HIATT.**

No. 9509.

United States Court of Appeals
Third Circuit.

Argued April 8, 1948.

Decided Sept. 14, 1948.

GOODRICH, Circuit Judge, dissenting.

———◆———

Daniel F. Mathews, of Syracuse, N. Y., for appellant.

Thayer Chapman, of Washington, D. C. (Arthur A. Maguire, U. S. Atty., of Scranton, Charles W. Kalp, Asst. U. S. Atty., of Lewisburg, Pa., and Nicholas R. Voorhis, Lieutenant Colonel, JAGD, of Washington, D. C., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In 1944, while based in England, appellant, then a private in our Air Corps, was convicted of rape and attempted rape by a general court-martial. His sentence of life imprisonment was later reduced to sixteen years. He appeals from the dismissal of his petition for habeas corpus by the District Court.

Both offenses were alleged to have been committed between 10:30 and 11:45 on the night of July 11, 1944, in the same area, which was about five miles distant from his particular base. Appellant claimed that on that evening he had bicycled by himself to public houses in nearby towns, had drunk some beer, and was back in camp well before midnight. Miriam Cullum, the attempted rape complaining witness, testified that she was returning to her home that night about half past ten, walking along with a Mrs. Kerry and wheeling her bicycle beside her. An American soldier passing by asked to accompany them home. Mrs. Kerry said "No." Miss Cullum said nothing. The soldier went with them. Mrs. Kerry left them at her house. Miss Cullum went off on her bicycle. The soldier went with her or followed her. She says he then forced her off her wheel and attempted to rape her. Some people came along and the soldier rode away on his bicycle. Miss Cullum says she told her parents what had happened.

The second girl, Miss Dale, stated that she was on her way home about 11:05. She, too, was on a bicycle. She said that an American soldier rode up to her on a bicycle and forced her off it. As some other soldiers passed she remounted and rode towards her home with the soldier riding beside her. A little later he pushed her from her wheel and after a struggle had intercourse with her. Miss Dale wore glasses. These were not dislodged in the melee. She, too, told her family of the occurrence. Neither the girls nor their families notified the police. It was Miss Dale's going to a doctor in fear of pregnancy, with the doctor advising the authorities, that brought on an official investigation.[1] Since the girls said an American soldier was involved in each instance, our army, through enlisted men of its Criminal Inves-

---

[1] The doctor examined Miss Dale about 10 o'clock the morning following the occurrence. She had some bruises on the right thigh, left arm, left knee and a graze on the left knee. She was not virgo intacta. There was no evidence of injury in the vagina at all. A local witness testified that Miss Dale had a bad reputation for chastity. Admittedly she had been out with another soldier that evening. That soldier was not present or accounted for at the trial.

tigation Division, investigated them in conjunction with the local police. Meanwhile, the Provost Marshal, Lieutenant Todd, was interviewing suspects, among whom was appellant. The latter was questioned for two hours by Todd and held for an identification line-up which was consented to by him and his unit commander. At the line-up the girls identified Smith. He contends that the line-up was unfair; that indications were given by the military police of his identity. We cannot, of course, here weigh the evidence as to that, but it is to be noted that the officer in charge was Lieutenant Todd.

Todd returned Smith to his cell after the line-up and then would seem to have interviewed the girls that same evening. Exhibit B for the defense referred to at the trial as "Statement of Sheila Dale to Lieutenant Todd" appears to be the record of such an interview. Todd signed these as true copies. Illustrating Todd's connection with the interviews, on page 4 of Exhibit B at the end of Miss Dale's statement and just under her typed signature, appears the following:

"Original statements in the pocketbook of P. C. 305 Felton, Pages Nos. 112-119, and 141, taken at 10.30 A. M. 12.7.44. at Dr. Beckett's Surgery, Manningtree, and at 7.45 P. M. 18.7.44. at Raydon Aerodrome, respectively.

Certified True Copy<br>s/ E. W. Shepherd.<br>Detective Sergeant.

A True Copy
Alan B. Todd,
ALAN B. TODD,
1st Lt. Inf."

A similar note follows the copy of Miss Cullum's statement. These point to close cooperation between Todd, chief of the Military Police, and the civilian constables. The government's brief emphasizes the later promotion of Lieutenant Todd to captain, which would merely confirm the impression that he was a zealous policeman. Exhibit B is not explained by the government. Its repetition of Todd's bald denial of seeing any witnesses until after his appointment as investigating officer hardly overcomes the implications in the photostat record.

As a result of the C. I. D. investigation and the interview and line-up conducted by Todd, charges were filed against Smith with a recommendation for general court-martial. Todd was appointed to conduct the thorough and impartial investigation called for by Article of War 70, 10 U.S.C.A. § 1542, which reads in part: "No charge will be referred to a general court martial for trial until after a thorough and impartial investigation thereof shall have been made. This investigation will include inquiries as to the truth of the matter set forth in said charges, form of charges, and what disposition of the case should be made in the interest of justice and discipline. At such investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available and to present anything he may desire in his own behalf either in defense or mitigation, and the investigating officer shall examine available witnesses requested by the accused. If the charges are forwarded after such investigation, they shall be accompanied by a statement of the substance of the testimony taken on both sides."

Section 35a of Manual for Courts-Martial, U. S. Army, 1928 (corrected to April 20, 1943), repeats the statutory provisions and the requirements of impartiality. Cf. War Department Technical Manual 27-255, "Military Justice Procedure" (1945), p. 37; Report of Secretary of War's Advisory Committee on Military Justice (1946), Section III E.

Todd's formal report reiterated what he had previously known plus some new matter from Miss Dale's sister and an American soldier who saw Miss Dale shortly after the offense. It also included statements by soldiers who said they saw Smith at the base five miles away from the crime scene within the critical time. Todd recommended a general court-martial.

The government asserts that, as he testified at the habeas corpus hearing, Todd had a completely open mind and was seeking only the facts. Unfortunately, as his testimony clearly shows, he considered the full facts unnecessary. He was asked why he had not examined Mrs. Kerry, the one person actually named in the investigation outside of the complaining witnesses who

had seen the offending soldier closely. He answered, "So far as from a prosecution standpoint it was not necessary. As far as from a defense standpoint I asked Smith if he wanted her and he said 'No'." [2] Such reply cannot be said to account satisfactorily for the elimination, without at least reasonable inquiry, of this vital witness. Todd's attitude, as he himself explains it, is interesting. Under AW 70 and in common fairness to Smith, the investigation had to be thorough and impartial. Its purpose was not only to present the prosecution with a case that would support conviction but to put before the court-martial authority at least a substantial picture of what had happened, based on all essential evidence. This was not done.

After Lieutenant Todd's investigation was reviewed by the Staff Judge Advocate, a general court-martial was designated. Appellant asserts he was denied counsel. He was represented by an Air Corps officer who was not a lawyer. Two officers who were lawyers were also part of his representation, but he says they did not actively participate in his defense. We find no merit in this point raised. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461, 146 A.L.R. 357, is cited but has no application. Articles 11 and 17 of the Articles of War, 10 U.S.C.A. §§ 1482, 1488, control. Under them the general court-martial had the power to appoint, as it did, defense counsel subject to the right of the accused to select his own as provided. There is no requirement that either defense counsel or trial judge advocate be lawyers. Romero v. Squier, 9 Cir., 133 F.2d 528; Altmayer v. Sanford, 5 Cir., 148 F.2d 161. And a study of the record reveals no abuse of discretion by the court-martial authority in the defense counsel appointments made.

But Lieutenant Todd's participation in the court-martial as assistant trial judge advocate is a matter of further serious concern. Todd as provost marshal had been in active charge of the investigation which resulted in Smith's being held. Todd then took over as the impartial investigator. There was nothing of any consequence added to the case against Smith during this period. Because of Todd's report and recommendation as investigator a general court-martial was convened, Smith tried before it for most serious offenses, and Todd, a lawyer, was one of the two members of the prosecution staff in court. The transcript does not reveal him as actually examining, but with the case prepared by him from the beginning it is reasonable to assume that he was of considerable pretrial and trial assistance to the trial judge advocate.

The review of the trial record by the staff judge advocate fails to comment on the failure to interrogate Mrs. Kerry or the special constables. It makes no mention that Provost Marshal Todd, responsible for Smith's arrest, was the impartial investigator whose report and recommendation resulted in the general court-martial in which he also took part as one of the two trial judge advocates.

On this habeas corpus appeal we cannot deal with alleged trial errors nor can we weigh the evidence. The only issue is the legality of the commitment of the appellant [3] and the particular question before us is whether the court-martial had jurisdiction in view of the pre-trial investigation which was conducted. The government asserts that compliance with AW 70 is not a prerequisite to the acquisition of jurisdiction by a general court-martial. In support of this it cites two cases where officers were tried by general courts. The courts included officers junior in rank to the accused, contrary to the Articles of War. This was held not to be a jurisdictional defect. The third reference is to a court having fewer than the maximum number of officers but more than the minimum required.[4] The relevance of these decisions is not perceived.

It is then urged that the viewpoint of the

---

[2] According to Miss Cullum, while she and Mrs. Kerry were walking and the soldier in question was cycling beside them, two special constables then passed going up the hill and the soldier said, "good-night" to them. Those constables, apparently readily available, were never examined or called as witnesses.

[3] Ex parte Quirin, 317 U.S. 1, 63 S.Ct. 1, 2, 87 L.Ed. 3; In re Yamashita, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499.

[4] Swaim v. United States, 165 U.S. 553,

79th Congress as expressed in House Report No. 2722, on Resolution 20, was that the requirements of Article 70 enacted in *1920* were not mandatory. It is said that the report of the 80th Congress, House Report 1034, with respect to the bill amending the Articles of War which recently became law, is in accord with this. That report states than an investigation should precede every general court-martial trial, "but * * * should be considered sufficient if it has substantially protected the rights of the accused." It should not, the report continues, be such as to "subject *every* * * * case to reversal for jurisdictional error on purely technical grounds." (Emphasis added.) While the thought of the current Congress as to 1920 legislation is not a judicial precedent, that thought tends to corroborate the jurisdictional nature of the error of which complaint is made.

■ Waite v. Overlade, 7 Cir., 164 F.2d 722, 723, is cited by the government for the proposition that the mandate of AW 70 is merely directory. In that case there is no indication wherein the pre-trial investigation was defective—the court simply states that it was alleged that *"proper* procedures had not been followed with respect to pretrial investigation." And the opinion goes on to say 164 F.2d at page 724: "If there was any relaxation of pretrial investigation requirements not waived by appellant (and we are not convinced that there was), *it certainly was not of a nature seriously to impair any of his fundamental constitutional rights." (*Emphasis added.) In the present matter we are not faced by some necesssary informality of investigation but by the lack of its two essentials, thoroughness and impartiality. We said in United States ex rel. Innes v. Hiatt, 3 Cir., 141 F. 2d 664, 666, that due process as applied to members of the military forces means "the application of the procedure of the military law. * * * But the due process clause guarantees to them that this military procedure will be applied to them in a fundamen-

tally fair way." Judge Biggs sitting in the district court in Hicks v. Hiatt, D.C.M.D. Pa., 64 F.Supp. 238, 249, with particular reference to the accused soldier preparing his defense, said, "The petitioner was not given the benefit of the procedure of the military law in this regard. This was a denial of due process of law to him." In a quite similar situation to the instant one where Todd is the real accuser, later impartial investigator, and finally assistant trial judge advocate, Judge Ryan in an exhaustive, well considered opinion on the subject holds: "It cannot fairly be said that an accused has suffered an injury without harm and that a purely technical wrong has been committed, which does no harm, when the one who is in fact the accuser is appointed to conduct a 'thorough and impartial investigation.' Especially is this not so, when the accuser functions, not only as the investigator, but later appears on the trial as a witness for the prosecution and gives material, vital and damaging testimony concerning the accused and evidence of an admission allegedly made by the accused to him." Henry v. Hodges, D.C.S.D. N.Y., 76 F.Supp. 968, 973.

The government stresses the recent decisions of the Judge Advocate General which maintain that the pertinent provisions of Article 70 are directory in effect.[5] However, in the Digest of Opinions of the Judge Advocate General of the Army (1912–1940), at page 292 appears the following: "A record of trial showed affirmatively that no investigation of the charges had been made prior to the trial. Held that the provisions of Article of War 70, 41 Stat. 739 [759] [10 U.S.C.A. Section 1542], with reference to investigating charges are mandatory and there must be a substantial compliance therewith before charges can legally be referred to trial. A court martial is without jurisdiction to try an accused upon charges referred to it for trial without having been first investigated in substantial compliance with the provisions of

---

17 S.Ct. 448, 41 L.Ed. 823; Mullan v. United States, 140 U.S. 240, 11 S.Ct. 788, 35 L.Ed. 489; Martin v. Mott, 12 Wheat. 19, 25 U.S. 19, 6 L.Ed. 537.

[5] CM 209477 Floyd, 17 BR 149, 153;

CM ETO 6694 Yarneck, 17 BR (ETO) 163, 179; CM (ETO) 4570 Haskins, 13 BR (ETO) 57, 71–75; CM 323486 Ruckman.

Articles of War 70, and in such a case the court martial proceedings are void ab initio."

Largely relying on the above, in Reilly v. Pescor, 8 Cir., 156 F.2d 632, 635, the court said regarding a charge which had not been investigated in accordance with Article 70, "We therefore may concede without deciding that the Court-Martial was without jurisdiction to try the added charge of uttering a forged document."

In Anthony v. Hunter, D.C.Kan., 71 F. Supp. 823, 831, a major reason for sustaining the application for habeas corpus was that witnesses in behalf of the accused soldier though available and named with a request that they be produced "were not produced at the Pre-trial Investigation or at the trial before the General Court-Martial." [6] And in the circumstances the court held that "Relief should be granted by a court of general jurisdiction, charged with the responsibility of inquiring into the legality of the detention of the accused."

 As Judge Biggs said in Hicks v. Hiatt, supra, "The petitioner's conduct" may well have been "such as to bring * * * disgrace upon the armed forces * * *". But "This fact may not be taken into consideration since the judgment of this court must be in accordance with law." The conversion of the provost marshal, who was the real accuser and arresting officer, into the investigator under Article 70 and then, following his recommendation for a general court-martial, his functioning as assistant trial judge advocate, was unjust to the accused. It did not substantially comply with AW 70. It did not give Smith the statutory protection guaranteed him as a soldier. The ignoring of Mrs. Kerry and the special constables though available and essential cannot be accepted as fulfilling the specific requirements for the investigation. We recognize the enormous exigencies of the then general conditions, but we cannot permit them to serve as an excuse for the failure to give the soldier involved the express safeguards with which Congress provided him.

The judgment of the District Court will be reversed and the cause remanded with directions that the appellant be discharged from custody.

GOODRICH, Circuit Judge (dissenting).

For the purpose of this dissent it will be assumed that compliance with Article of War 70 conditions the jurisdiction of a general court-martial, though the proposition is open to grave doubt.[1] But with this

---

[6] It will be remembered that there is no claim that defense counsel were ever asked whether they wished Mrs. Kerry produced as a witness. Lieutenant Todd, as previously mentioned, did say at the habeas corpus hearing that he asked Smith if he wished to have her as a witness. Smith at the same hearing testified that he asked his "defense counsel for her presence as a defense witness during the course of the trial."

[1] At least since 1943 the administrative interpretations of such section have been uniformly of the view that it was not jurisdictional. Holding of Board of Review in C. M. 299477, Floyd, 17 B. R. 145, 153-6 (decided February 2, 1943); Holding of Board of Review in C. M. 323486, Ruckman (1947). The contents of the legislative history cited in the majority's opinion compels the view that Congress apparently agrees with such interpretation and did not at that time desire to change it. Furthermore, the opinion of the Judge Advocate General cited in the majority's opinion to the effect that the Article is jurisdictional was super-

seded by his opinion in the Floyd case. See 57 Yale L.J. 483, 485 (1948). That earlier opinion, moreover, was in a case where the Judge Advocate General had found no pre-trial investigation whatsoever. See 57 Yale L.J., supra, 484, f. n. 15.

The authorities relied upon do not persuade such a conclusion. They all rely upon the superseded Judge Advocate General's opinion and are cases in which the irregularities in the pre-trial investigations permeated the trial itself. Thus in Hicks v. Hiatt, D.C.M.D.Pa.1946, 64 F.Supp. 238 the telling of the accused that his pre-trial statements would be used only in his favor induced statements which were used against him at the trial. Moreover, the matters vital to the accused's defense were not investigated on the mistaken notion that they were incompetent in the consideration of the offense. Anthony v. Hunter, D.C.Kan. 1947, 71 F.Supp. 823, also relied upon the superseded opinion and the witnesses requested by the accused were not produced at the pre-trial investigation or the

assumption there seems no adequate basis for rejecting the Trial Court's conclusion that the requirements of that Article were complied with and that a thorough and impartial investigation was made prior to the appellant's trial. Such a conclusion is one of fact not law and when made by a District Judge should be allowed to stand unless we think it clearly wrong and, of course, this is especially true where he, and not we, have had the benefit of the presence of witnesses giving oral testimony. Elaboration of the wording and effect of Rule 52 is unnecessary.

The bases for rejecting the Trial Judge's conclusion here seem inadequate. Quite obviously Lieutenant Todd was not the party offended and had no individual concern in this soldier's prosecution. The record affirmatively shows that he busied himself in securing witnesses requested by the petitioner. It seems to me clear that the sum total of his activities at the investigation stage of the case were only matters called for in the performance of his duties as Provost Marshal at this particular air base. For instance, it is said that he took statements from complaining witnesses. If he did, it would seem to me to have no significance in making a conclusion concerning the fairness of his investigation. But his signature on the photostat of those statements is only as an authenticating officer: in other words, he simply certifies certain writing as a true copy of another writing. The statements in fact were taken by a man named Felton, a British police constable. It is true that Lieutenant Todd in cooperation with the British police conducted the line-up in which the girls who claimed to have been attacked identified Smith. The Lieutenant did that because it was part of his official duties. It does not, it is submitted, in the least show any bias against this prisoner. The girls made the identification, not Todd.

I cannot follow the reasoning by which it is thought that Lieutenant Todd's participation as an Assistant Trial Judge Advocate of the court-martial showed a lack of fair or thorough investigation. Possibly such previous work as investigator would make it inappropriate for him to sit as a member of a judicial tribunal.[2] But he only acted as counsel and assistant counsel at that. The use of information gained in the investigation, assuming it was made, does not show the investigation was not impartial and objective.

The last point relied on to prove lack of thoroughness in the investigation was the failure to call Mrs. Kerry. There are three answers to this: One is that Smith, himself, did not want her called. The second is that at most she was present only at the first meeting between Smith and the complaining witness in the attempt case. And, third, I submit there is no basis for requiring that an investigation, in order to be thorough and impartial, seek out every person mentioned in connection with the affair under scrutiny, especially after a preliminary statement has been taken indicating the probable content of what such person would have to say.

This is a case where, in my opinion, the conclusion reached by the Trial Judge should stand and it seems to me that we are going beyond our proper function in upsetting it.

---

trial. The only two Circuit Court of Appeals cases which deal at all with the point are as much in favor of the Government as the Petitioner. Waite v. Overlade, 7 Cir., 1947, 164 F.2d 722; Reilly v. Pescor, 8 Cir., 1946, 156 F.2d 632, certiorari denied, 1946, 329 U.S. 790, 67 S.Ct. 353, 91 L.Ed. 676.

[2] But cf. Keyes v. United States, 1883, 109 U.S. 336, 38 S.Ct. 202, 27 L.Ed. 954, in which the validity of a court-martial sentence was upheld by the Supreme Court where the same officer was a complainant, testified as a witness, and sat and passed judgment as a member of the court-martial. Carter v. Woodring, 1937, 67 App.D.C. 393, 92 F.2d 544, certiorari denied, 1937, 302 U.S. 752, 58 S.Ct. 283, 82 L.Ed. 582.