**Johnnie F. BURNS, Appellant,**

v.

**Dr. Jesse D. HARRIS, Warden, Appellee.**

**No. 17665.**

United States Court of Appeals
Eighth Circuit.

Jan. 27, 1965.

Rehearing Denied Feb. 11, 1965.

Johnnie F. Burns filed typewritten brief pro se.

F. Russell Millin, U. S. Atty., John Harry Wiggins, Asst. U. S. Atty., Kansas City, Mo., Abraham Nemrow, Lt. Col., JAGC Office of Judge Advocate General, Dept. of the Army, and Joseph J. DeFrancesco, Capt., JAGC, Office of Judge Advocate General, Dept. of the Army, Washington, D. C., filed printed brief, for appellee.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

PER CURIAM.

Johnnie F. Burns, now confined in the United States Medical Center at Springfield, Missouri, appeals from an order denying his ninth petition for a writ of habeas corpus. By this petition Burns challenges the validity of his general court-martial conviction for unpremeditated murder, in violation of Article 118 (2) of the Uniform Code of Military Justice, 10 U.S.C. § 918 (then 50 U.S.C. § 712).[1]

Burns' present petition rests upon claimed violations of Articles 10, 32 and 33 of the Uniform Code, 10 U.S.C. §§ 810, 832 and 833 (then 50 U.S.C. §§ 564, 603 and 604).

In 1953 Burns, aged 19, was an American serviceman stationed at Wiesbaden, Biebrich, Germany. On 26 November of that year, our Thanksgiving Day, Wilhelm Brueckmann, a German national, was assaulted in the Schlosspark in Wiesbaden and received knife wounds. On 8 December Burns was apprehended. On the same day he was questioned, orally confessed, and was placed in pre-trial confinement. On 11 December he signed a written statement. A charge of aggravated assault in violation of Article 128, 10 U.S.C. § 928 (then 50 U.S.C. § 722), was preferred against him on 19 December.

On 22 December the pre-trial investigation required by Article 32 was made by Major Frank A. Gaffke. On 26 December Mr. Brueckmann died from the knife wounds he had received. The charge against Burns was then changed to murder and another Article 32 pre-trial investigation was made by Major Albert G. Levesque.

In February 1954 Burns was tried and convicted. The court-martial sentenced

1. The present Code was enacted August 10, 1956, 70A Stat. 36, and is 10 U.S.C. §§ 801–940. This, however, was a reenactment, without any change pertinent here, of the act of May 5, 1950, 64 Stat. 108, which had been 50 U.S.C. §§ 551–736. Although the crime with which this appeal is concerned took place in 1953, we cite both codifications.

him to a dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for life. The case was reviewed by military appellate tribunals and affirmed. In September 1955, upon completion of this appellate review, Burns was dishonorably discharged pursuant to the sentence of the court. The period of his confinement in excess of 36 years was later remitted by orders of the Secretary of the Army.

Chief Judge Gibson, on 25 February 1964, entered his order of denial. He concluded that, although the petition presented a ground which could have been advanced in Burns' prior petitions, it was one which had not previously been considered; that, because this omission was not deliberate, the court would dispose of the case on the merits; that the petitioner "has suffered no deprivation of rights which would operate to oust the court-martial of jurisdiction or which would operate to effect petitioner's release"; and that there was no deprival of the speedy trial which Article 10 was designed to afford.

Burns filed a motion for reconsideration suggesting that the gist of his petition was not so much the speedy trial issue as it was his confinement for 12 days from 8 December 1953 without the filing of charges against him, and that this was a violation of Article 10 and of the principle of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). Judge Gibson refused to draw a parallel between Article 10 and Rule 5(a), F.R.Cr.P., upon which Mallory rests, and denied the motion for reconsideration.

The government suggests here that because Burns' claims relative to violations of his rights could have been raised in the military courts, they may not now be raised for the first time on habeas corpus. In view of the facts that the alleged rights involved are constitutional ones and that, under the Supreme Court's decisions and observations in Hiatt v. Brown, 339 U.S. 103, 111, 70 S.Ct. 495, 94 L.Ed. 691 (1950), Burns v. Wilson, 346 U.S. 137, 139–140, 142, 144, 149, 73 S.Ct. 1045, 97 L.Ed. 1508, 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363 (1953), Fowler v. Wilkinson, 353 U.S. 583, 584, 77 S.Ct. 1035, 1 L.Ed.2d 1054 (1957), and Reid v. Covert, 354 U.S. 1, 37, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) [see Williams v. Heritage, 323 F.2d 731, 732 (5 Cir. 1963), cert. denied 377 U.S. 945, 84 S.Ct. 1352, 12 L.Ed.2d 308], some uncertainty may still exist as to the extent of the power of a civil court to review on habeas corpus any claim relating to a military tribunal's denial of a constitutional right, we choose to avoid disposing of this particular case on jurisdictional grounds and, as did the district court, we pass directly to the merits.

Petitioner's briefs, despite background references to his being held incommunicado, interrogations, denial of permission to call a civilian lawyer, a deceptograph examination, production of the knife, and the conviction being the result of evidence obtained while he was held without charge, present three basic points: (1) His confinement from 8 December until 19 December without charge and without the taking of steps to try him until 22 December was a violation of Article 10. (2) It was also a violation of Article 33. (3) The Article 32 pre-trial investigation by Major Gaffke should have been made within 72 hours after his confinement began.

We dismiss forthwith as frivolous Burns' initial suggestion that during the period from 8 to 19 December, although he "was told many times that he was being interrogated concerning an assault", he was never told that he was charged with committing the assault itself.

Of more concern is his general argument that, under Article 10,[2] immediately

2. Article 10. "* * * When any person * * * is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."

upon his confinement he was entitled to be informed of the accusations against him; that by Article 32 [3] a pre-trial impartial investigation is required and is to include a recommendation as to disposition; that the Article 32 investigator is the military equivalent of the civil commissioner or magistrate; that Article 10 is the military counterpart to Rule 5(a), F.R.Cr.P.; and that Mallory, the sole case relied upon by the petitioner, applies here because he was not given the benefit of investigation without unnecessary delay.

Burns of course knew at once of the charge against him. The court-martial record, which we have examined, contains substantial evidence that on 8 December, the day of his arrest and confinement, he was told why he was apprehended and being questioned. And his knowledge is conclusively demonstrated by his oral confession to the assault on the very day he was apprehended and by his being placed in pre-trial confinement only after that confession.

█ We do not equate Articles 10 and 32, singly or in combination, with Rule 5(a) and the consequent application of Mallory. Article 10 requires that "immediate steps" be taken to inform the accused and to try him or to dismiss the charges. Article 32, however, requires a "thorough and impartial investigation" before charges may be referred to a general court-martial. Both are protective for the serviceman and are among those Articles of the Uniform Code intended to assure him a speedy trial. [Incidentally, there is nothing in Article 32 which

supports Burns' reference to a 72 hour time limit for the investigation].

We find nothing in the Code or elsewhere in the law, or in the legislative history, which purports to provide or be a counterpart to Rule 5(a) or which requires, as does the rule, a judicial proceeding "without unnecessary delay" upon arrest. Article 9, 10 U.S.C. § 809 (then 50 U.S.C. § 563), authorizes arrest or confinement for probable cause upon order of a specified officer. Article 98, 10 U.S.C. § 898 (then 50 U.S.C. § 692), tempers this by providing for disciplinary action against one responsible for unnecessary delay. But the Code contemplates the possibility of some delay in the Article 32 investigation. Article 30,[4] 10 U.S.C. § 830 (then 50 U.S.C. § 601), requires that the person preferring a charge shall state in writing either that he has personal knowledge or "has investigated" the matter and that, upon such preference, the proper commander shall take immediate steps "to determine what disposition should be made thereof". This takes place even before the more formal Article 32 investigation which perhaps does have a counterpart in the civil grand jury proceeding. See Henry v. Hodges, 76 F.Supp. 968, 973–974 (S.D. N.Y.1948), reversed on other grounds, 171 F.2d 401 (2 Cir.), cert. denied 336 U.S. 968, 69 S.Ct. 937, 93 L.Ed. 1119.

We, of course, are aware that military justice often, and perhaps usually, has its peremptory features but we are also cognizant of the important fact that

"[T]he rights of men in the armed forces must perforce be conditioned to meet certain overriding demands

---

3. Article 32. "(a) No charge or specification may be referred to a general court-martial for trial until a thorough and impartial investigation of all the matters set forth therein has been made. This investigation shall include inquiry as to the truth of the matter set forth in the charges, consideration of the form of charges, and a recommendation as to the disposition which should be made of the case in the interest of justice and discipline."

4. Article 30. "(a) Charges and specifications * * *
  "(1) that the signer has personal knowledge of, or has investigated, the matters set forth therein; and
  "(2) that they are true in fact to the best of his knowledge and belief.
"(b) Upon the preferring of charges, the proper authority shall take immediate steps to determine what disposition should be made thereof in the interest of justice and discipline, and the person accused shall be informed of the charges against him as soon as practicable."

of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment. The Framers expressly entrusted that task to Congress." [footnote omitted] Primary opinion in Burns v. Wilson, supra, p. 140 of 346 U.S., p. 1048 of 73 S.Ct., quoted with approval in Fowler v. Wilkinson, supra, p. 584 of 353 U.S., p. 1035 of 77 S.Ct. See In re Grimley, 137 U.S. 147, (1890).

 We therefore conclude that Rule 5(a) and Mallory provide no precedent for and have no application to this petitioner's pre-trial court-martial proceedings and that the requirements of Articles 10 and 32 were fully satisfied.

Burns' final point relating to Article 33 [5] and its requirement that charges be forwarded within eight days to the officer exercising general court-martial jurisdiction affords him no basis for relief. This, too, is one of the Articles concerned with a speedy trial but it obviously is not inflexibly mandatory or self-executing. It contains an exception, or area of discretion, in its twice appearing "if practicable" language. Here, again, the overriding considerations of military life were recognized by the Congress.

In any event, the delay beyond the eight day period here was short. No possible unfair or improper prejudice to Burns could have been effected. "The right to a speedy trial is relative and must be determined in the light of all the circumstances of each case." Gorko v. Commanding Officer, etc., 314 F.2d 858, 860 (10 Cir. 1963). The delay was not purposeful or oppressive. See Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). It was obviously warranted by the serious nature of the incident and by the condition of the

5. Article 33. "When a person is held for trial by general court-martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investiga-

victim who died soon thereafter. Burns was arrested on 8 December 1953. He was tried and convicted in late February 1954. Less than three months thus elapsed between arrest and the completion of his trial. Burns was clearly afforded the speedy trial which the Uniform Code provides.

The district court's determination that the files and records conclusively show that this petitioner is not entitled to relief for the reasons he now advances, was clearly right.

Affirmed.

tion and allied papers, to the officer exercising general court-martial jurisdiction. If that is not practicable, he shall report in writing to that officer the reasons for delay."