Robert C. **HARRIS**, Appellant,

v.

Dr. P. J. **CICCONE**, Director, Medical Center for Federal Prisoners, Springfield, Missouri, Appellee.

No. 19456.

United States Court of Appeals
Eighth Circuit.

Oct. 24, 1969.

John J. Kitchin, Kansas City, Mo., for appellant.

Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., for appellee; Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., with him on the brief.

Before BLACKMUN, GIBSON and BRIGHT, Circuit Judges.

BLACKMUN, Circuit Judge.

On May 1, 1964, Robert C. Harris (born March 14, 1915), then an inmate of the United States Medical Center at Springfield, Missouri, filed his appli-

cation for a writ of habeas corpus with the United States District Court for the Western District of Missouri. Chief Judge Becker denied that application. Harris v. Ciccone, 290 F.Supp. 729 (W.D. Mo.1968). Harris appeals in forma pauperis with counsel appointed by the district court and reappointed by us. In the meantime Harris, with leave of court, has been transferred to the United States penitentiary at Lewisburg, Pennsylvania, and, still later, has been released on parole.[1]

The parties were able to agree upon a statement of issues. Some facts were established through the device of statements and responses thereto. Judge Becker on March 29, 1966, held an evidentiary hearing at which Harris appeared and testified.

Harris in 1950 was charged with committing, on April 23, 1950, at Engelsbrand in the then French Zone of occupied Germany, (1) the murder of a German national, (2) an unlawful entry of a German dwelling with intent to commit robbery, and (3) an assault upon the persons of two German nationals with intent to commit robbery, in violation, respectively, of Articles 92 and 93 of the then existing Articles of War, 62 Stat. 604, 640.

At the time of the alleged offenses and until his trial and the ensuing judgment and sentence became final, Harris was a soldier on active duty in the United States Army in Germany. His official station was at Gelnhausen, near Frankfurt. He held the rank of corporal.

At the pretrial investigation Harris was represented by two lieutenants who were not lawyers. He pleaded not guilty

1. Harris' release early in 1968 evidently was a mandatory one under 18 U.S.C. § 4163. His 25-year sentence, hereinafter referred to, does not expire full term until 1975. He thus has the status of releasee on parole. 18 U.S.C. § 4164; Williams v. Ciccone, 415 F.2d 331 (8 Cir. 1969).

The district court's jurisdiction was not defeated by the transfer, Holland v. Ciccone, 386 F.2d 825, 827 (8 Cir. 1967), cert. denied, 390 U.S. 1045, 88 S.Ct. 1646,

20 L.Ed.2d 307, and the case was not rendered moot by the release, Castle v. United States, 399 F.2d 642, 644 (5 Cir. 1968). See Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); United States ex rel. Rybarik v. Maroney, 406 F.2d 1055, 1056 n. 1 (3 Cir. 1969); Carafas v. LaVallee, 391 U.S. 234, 237–240, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Sibron v. New York, 392 U.S. 40, 50–58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

to the charges. His trial by general court-martial was at Stuttgart on July 19, 1950. At the trial he was represented by Wendell J. Willmore, retained civilian counsel, and by Major William J. Owen, assigned military counsel. Both Mr. Willmore and Major Owen were lawyers. Mr. Willmore was a member of the Ohio bar; Major Owen was admitted to the bar of the highest court of a state. Harris did not take the stand. No alleged admission or confession on his part was admitted in evidence.

The trial resulted in Harris' conviction on the charges of murder and unlawful entry and of assault on one of the two German nationals. He was acquitted of the charge of assault on the other named German national. On July 20 the court imposed a sentence of 25 years and ordered a dishonorable discharge and a forfeiture of all accruing pay and allowances. The required review followed. The convening authority referred the record to his Staff Judge Advocate, who rendered his opinion as to legality and his recommendation for approval. In its turn the Board of Review, on August 17, 1950, held the record of the trial "to be legally sufficient to support the findings of guilty and the sentence." The sentence, accordingly, was approved. Harris was committed to the custody of the Attorney General.

In the proceedings before the Board of Review, neither Harris nor the government was represented by counsel.

Thirteen years later, in September 1963, Harris sought review of his conviction by the United States Court of Military Appeals. This was denied for lack of jurisdiction in that the court was not yet in existence when Harris' conviction became final in 1950. See Act of May 5, 1950, ch. 169, § 1 (Art. 67), 64 Stat. 107, 129.

The eight issues before the district court, 290 F.Supp. at 731, are reduced to three in the appellate briefs. Although each side states the issues somewhat differently, they relate to alleged deprival of constitutional rights (1) during the pretrial investigation, (2) during the post-trial review, and (3) at the trial itself.

Preliminary and general comments are perhaps in order:

This court has indicated that a civil tribunal's range of inquiry on habeas review of a military conviction is narrower than on habeas review of a non-military conviction. Swisher v. United States, 354 F.2d 472, 475 (8 Cir. 1966). Chief Judge Murrah has made the same observation and has further noted that the civil courts have limited themselves to a consideration of the jurisdiction of courts-martial and have assumed no supervisory or correcting power over their decisions; that, nevertheless, in military habeas cases the civil courts do have jurisdiction to determine whether the accused was denied any basic constitutional right; and that, where the constitutional issue involves a factual determination, the court's inquiry is limited to determining whether the military court gave full and fair consideration to the constitutional issues. Kennedy v. Commandant, 377 F.2d 339, 342 (10 Cir. 1967), and cases cited. But we must note, too, that the Supreme Court recently has reminded us that "courts-martial as an institution are singularly inept in dealing with the nice subtleties of constitutional law." O'Callahan v. Parker, 395 U.S. 258, 265, 89 S.Ct. 1683, 1687, 23 L.Ed.2d 291 (1969).

With this as background, we turn to the respective phases of the military proceeding to which Harris was subjected.

A. *Pretrial.* Because a general court-martial was indicated, a pretrial investigation was ordered pursuant to the requirements of Article of War 46, subd. b, as then in effect.[2] Major

---

2. Article 46, subd. b, 41 Stat. 787, as amended in 1948, 62 Stat. 604, 633, read: "No charge will be referred to a general court-martial for trial until after a thorough and impartial investigation thereof shall have been made. This investigation will include inquiries as to the truth of the matter set forth in said

Fred E. Rosell, Jr., was appointed April 28, 1950, to conduct this investigation. The following day Harris asked that he be represented in that investigation by B. E. Gower, a civilian attorney who practiced in Frankfurt. Major Rosell initially gave Harris until 8 a. m. on May 1 to obtain civilian counsel.[3] It appeared that Mr. Gower was not available to represent Harris before May 4. Accordingly, the two lieutenants, neither of whom was a lawyer, were appointed to assist Harris during the pretrial. Major Rosell took the testimony of 20 witnesses. Only one of these, Faber, was subjected to inquiry on behalf of Harris and that inquiry was limited to two questions. The lieutenants were not present while seven witnesses were examined or during the inspection of laboratory findings.

Harris' argument here is that he was denied meaningful representation during the pretrial, for the investigation was not delayed a few additional hours until lawyer Gower would become available, the lieutenants were not legally trained, and they did nothing for him anyway and even were absent from part of the proceeding; that this amounted to a denial of his sixth amendment right to assistance of counsel; and that the military pretrial is a critical stage of the proceeding.

charges, form of charges, and what disposition of the case should be made in the interest of justice and discipline. The accused shall be permitted, upon his request, to be represented at such investigation by counsel of his own selection, civil counsel if he so provides, or military if such counsel be reasonably available, otherwise by counsel appointed by the officer exercising general courts-martial jurisdiction over the command. At such investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available and to present anything he may desire in his own behalf, either in defense or mitigation, and the investigating officer shall examine available witnesses requested by the accused. If the charges are forwarded after such investigation

This issue, we feel, must be decided against Harris for the following reasons:

1. In Humphrey v. Smith, 336 U.S. 695, 69 S.Ct. 830, 93 L.Ed. 986 (1949), the Supreme Court affords us insight as to the nature and character of Article 46, subd. b, of the Articles of War. Under consideration there was the earlier 70th Article of War, 41 Stat. 759, 802, enacted in 1920, as amended, 50 Stat. 724, in 1937. Article 70, as so amended, was identical to the later Article 46, subd. b, except that the third sentence of Article 46, subd. b, was not present in Article 70. It was contended that the provision, "No charge will be referred to a general court martial for trial until after a thorough and impartial investigation thereof shall have been made", was jurisdictional, that the pretrial investigation was an indispensable prerequisite, and that, without it, a court-martial judgment of conviction was wholly void. The majority ruled otherwise. They noted, p. 697, 69 S.Ct. 830, 831–832, that the Articles served important functions and provided safeguards, that the accused could object to trial in the absence of the investigation, and that

"Its original purposes were to insure adequate preparation of cases, to guard against hasty, ill-considered charges, to save innocent persons from the stigma of unfounded charges, and to

they shall be accompanied by a statement of the substance of the testimony taken on both sides."

3. The order appointing Major Rosell as the pretrial investigating officer was issued April 28, 1950, at Gelnhausen, Germany, from Headquarters, 547th Engineer Combat Batallion, U. S. Army. It stated, "If accused desires to be represented by civilian counsel, he will be given a reasonable time within which to provide such counsel, but if accused fails to provide such civilian counsel within 48 hours, you will report the matter to this headquarters, whereupon a competent officer will be designated to act as defense counsel and the investigation will then proceed."

prevent trivial cases from going before general courts-martial. * * * All of these purposes relate solely to actions required in advance of formal charges or trial. All the purposes can be fully accomplished without subjecting court-martial convictions to judicial invalidation where pretrial investigations have not been made.

* * * * * *

"This court-martial conviction resulting from a trial fairly conducted cannot be invalidated by a judicial finding that the pre-trial investigation was not carried on in the manner prescribed by the 70th Article of War" (footnote omitted). 336 U.S. at 698–699, 701, 69 S.Ct. at 833.

In *Smith* there had been an investigation but the claim was that it was neither thorough nor impartial. The case, therefore, is flat authority against Harris' position here. Indeed, the language we have quoted qualifies as dictum for even the more extreme situation where there is no pretrial at all. The following year, in Hiatt v. Brown, 339 U.S. 103, 110, 70 S.Ct. 495, 498, 94 L.Ed. 691 (1950), the Court held that a lower court "was in error in extending its review, for the purpose of determining compliance with the due process clause, to such matters as * * * the adequacy of the pretrial investigation, and the competence of the * * * defense counsel." To the same effect as Humphrey v. Smith, on this point of pretrial investigation and Article 70, and decided after the *Smith* case, are Rought v. Steele, 184 F.2d 118 (8 Cir. 1950) (alleged lack of thorough and impartial investigation and lack of sufficient opportunity to cross examine); Palomera v. Taylor, 344 F.2d 937, 939 (10 Cir. 1965), cert. denied, 382 U.S. 946, 86 S.Ct. 405, 15 L.Ed.2d 354 (alleged failure to call a key witness and failure to provide counsel); Richardson v. Zuppann, 174 F.2d 829 (3 Cir. 1949) (investigating officer's failure personally to interview the witnesses, see 81 F.Supp. 809, 812); Liner v. Cozart, 174 F.2d 471 (5 Cir. 1949) (representation by a nonlawyer officer and a failure to call witnesses, see 80 F.Supp. 540). See Kronberg v. Hale, 180 F.2d 128, 132 (9 Cir. 1950), cert. denied, 339 U.S. 969, 70 S.Ct. 987, 94 L.Ed. 1377.

This court, too, has emphasized the protective function of the pretrial investigation (under Article 32 of the later Uniform Code of Military Justice). Burns v. Harris, 340 F.2d 383, 386 (8 Cir. 1965), cert. denied, 382 U.S. 960, 86 S.Ct. 439, 15 L.Ed.2d 363.

From these authorities one concludes that even the absence of a pretrial investigation would not rise to the status of constitutional error. Surely, then, irregularity in the pretrial procedure, when held, does not rise to that status where the ensuing military trial is fairly conducted.

2. The pretrial investigation, therefore, obviously has not been regarded as a critical pretrial stage, where important rights could be lost, as that concept has been developed and held significant in cases such as United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

3. The military pretrial investigation is not adversary. The record does not indicate that Major Rosell was legally trained or acted in any way as a prosecutor would act. No prosecutor was present. The proceeding was what its description indicated, namely, an investigation. Harris could only have benefited from the procedure; he could not have been harmed by it, for he was present, he saw the witnesses and heard their statements, and, for what it may have been worth, he had two officers assigned to him and standing by him.

4. Article 46, subd. b, however, as has been pointed out, does have the one additional sentence which was not present in the earlier Article 70 under consideration in Humphrey v. Smith. That sentence provides for representation by counsel of one's selection, even civilian counsel if one so requests. The language is not specific as to whether

"counsel" is limited to a person trained in the law or whether it embraces, as well, a lay advisor. The decided cases concerning the Articles of War, however, clearly hold that the term did not mean a lawyer and that a commissioned officer admitted to practice before courts-martial was a competent attorney, within the purview of the sixth amendment, even in the adversary and trial aspects of the military proceedings. Smith v. McNamara, 395 F.2d 896, 900 (10 Cir. 1968), cert. denied, 394 U.S. 934, 89 S.Ct. 1211, 22 L.Ed.2d 466; Altmayer v. Sanford, 148 F.2d 161, 162 (5 Cir. 1945); Romero v. Squier, 133 F.2d 528, 531–532 (9 Cir. 1943), cert. denied, 318 U.S. 785, 63 S.Ct. 982, 87 L.Ed. 1152; Smith v. Hiatt, 170 F.2d 61, 64 (3 Cir. 1948), rev'd on other grounds, 336 U.S. 695, 69 S.Ct. 830, 93 L.Ed. 1073.

5. One must recognize that with the advent of the Uniform Code of Military Justice in 1950–51,[4] and its revision in 1956, we have, in Article 27 thereof, provisions that both trial and defense counsel in a general court-martial must be legally trained and that, for a special court-martial, defense counsel must have qualifications equal to those of the prosecution. 50 U.S.C. § 591 and its replacement, 10 U.S.C. § 827. It is interesting to note that in Kennedy v. Commandant, supra, 377 F.2d 339 (10 Cir. 1967), the court held that, under the Uniform Code, the appointment of a nonlegally trained officer to defend a serviceman in a special court-martial, despite the accused's pretrial request for a lawyer, was not violative of fifth and sixth amendment rights. The Code thus was given its literal thrust. It seems to us that if, under the present Code, the absence of trained counsel at a special court-martial does not offend the sixth amendment, the absence of trained counsel at Harris' pretrial investigation in 1950 does not do so.

■ 6. The issue of inadequacy of his representation at the pretrial was not raised by Harris or on his behalf in the military trial itself. Its absence indicates that legally trained counsel regarded the claim as of no merit. Harris now, of course, would assert that the failure to raise the point is a factor indicating counsel incompetency. The established rule, however, is that the claim of inadequacy of counsel even at the trial itself, if not raised in the military proceeding, may not be considered on federal habeas. Palomera v. Taylor, supra, 344 F.2d at 939; McKinney v. Warden, 273 F.2d 643, 644 (10 Cir. 1959), cert. denied, 363 U.S. 816, 80 S.Ct. 1253, 4 L.Ed.2d 1156.

■ 7. This court heretofore has ventured to suggest an analogy between the military pretrial investigation and the civil grand jury proceeding. Burns v. Harris, supra, 340 F.2d at 386. If this analogy, by any chance, is sound, it drains Harris of comfort, for even a witness usually has no constitutional right to the presence of counsel at a grand jury proceeding despite the presence and influence there of a government prosecutor. Rule 6(d), Fed.R. Crim.P.; Directory Services, Inc. v. United States, 353 F.2d 299, 301 (8 Cir. 1965). See In re Groban, 352 U.S. 330, 332, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957); Anonymous Nos. 6 and 7 v. Baker, 360 U.S. 287,

4. The Uniform Code of Military Justice, which was the Act of May 5, 1950, ch. 169, 64 Stat. 108, codified as 50 U.S.C. §§ 551–741 (1951), by its terms, § 5, 64 Stat. 145, became effective only in 1951. It supplanted the theretofore existing Articles of War. Section 4 of the Act provided that "offenses committed and all penalties * * * or liabilities incurred prior to the effective date of this Act * * * may be prosecuted, punished, and enforced, and action thereon may be completed, in the same manner and with the same effect as if this Act had not been passed."

The 1950 Act was repealed and replaced by the Act of August 10, 1956, ch. 1041, 70A Stat. 36. The 1956 Act was effective January 1, 1957, and is now codified as 10 U.S.C. §§ 801–940. Section 53 of the 1956 Act contains reservations, similar to those in the 1950 Act, as to penalties theretofore incurred and proceedings theretofore begun.

295, 79 S.Ct. 1157, 3 L.Ed.2d 1234 (1959). And, as has been pointed out, Harris at his pretrial enjoyed privileges which a person indicted by a grand jury does not have, namely, being present, seeing the witnesses, hearing their testimony, and having two officers assigned to him.

We therefore necessarily conclude that the refusal of Major Rosell to await the availability of attorney Gower (assuming that Gower was willing to represent Harris, a fact not at all established by the record) and the absence of legally trained counsel representing Harris at the pretrial investigation did not constitute constitutional or prejudicial error.

B. *Post-trial.* Article 50, subd. e, of the Articles of War, 62 Stat. 635, in effect at the time of Harris' conviction, provided that a sentence, such as his, involving a dishonorable discharge not suspended was not to be executed until the required review had been completed. Article 50, subd. g, granted authority to the reviewing entity to weigh the evidence, to judge the credibility of witnesses, and to determine controverted questions of fact. The Article says nothing about the presence of counsel at the review. The Manual for Courts-Martial, 1949, par. 99, issued pursuant to Article 8 of the Articles of War, and now Article 36 of the Uniform Code, 10 U.S.C. § 836, permitted the filing of briefs on behalf of the accused under rules prescribed by the Judge Advocate General.

■ Harris was not represented by counsel before the Board of Review and was not present in person there. No brief was submitted to the Board on his behalf. Harris testified that he was not informed that he could file a brief there. The district court noted, 290 F. Supp. at 734, that no one appeared before the Board or filed a brief on behalf of the prosecution.

This issue, too, must be decided against Harris because: (1) Article 50, in providing for review, did not provide for adversary review. A brief on behalf of an accused was permissive only and this was outlined by the Manual and not expressly by the Article. Also, it appeared not to extend to the prosecution. There was no provision, either, for oral argument. The contrast with Article 70 of the Uniform Code, 50 U.S.C. § 657 (c), and its replacement, 10 U.S.C. § 870 (c), which calls for such representation, is most evident and significant. (2) The review which was prescribed by Article 50 did take place in Harris' case. (3) Neither Harris nor his lawyer-counsel made any request to appear before the Board of Review or to file a brief there. (4) We agree with the district court that this review prescribed by Article 50, and carried out for Harris, does not equate with the appeal of a criminal case to an appellate court. Accordingly, such due process cases as Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967); Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); and Entsminger v. Iowa, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967), cited to us by Harris, and Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), have no precedential force here. And no claim is made, or evidence presented, of unequal protection. (5) The Board's power to weigh evidence, to judge the credibility of witnesses, and to determine controverted questions of fact, all contrarily to the result at the trial, surely satisfies any constitutional standard or requirement.

It is contended that the right to counsel before the Board of Review "should be mandatory" and that the Board has the same function as an appellate tribunal. The answer to this is that Congress did not so provide in the Article of War and, thus far at least, due process has been held not to require a right to appellate review at all. McKane v. Durston, 153 U.S. 684, 687, 14 S.Ct. 913, 38 L.Ed. 867 (1894); National Union of Marine Cooks and Stewards v. Arnold, 348 U.S. 37, 43, 75 S.Ct. 92, 99 L.Ed. 46 (1954); Griffin v. Illinois, 351 U.S. 12, 18, 21, 27, 36, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Tanner v. United States, 401 F.2d 281,

285 (8 Cir. 1968), cert. denied, 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806.

C. *The military trial itself.* Five points are asserted:

1. The failure to inform Harris of the specific nature of the charges against him. This claim does not touch at all the charges of housebreaking and assault. It is directed only to the murder charge. It seems to come down to a difference between premeditated and unpremeditated homicide. It is claimed that Harris felt he was charged with premeditation and prepared his defense accordingly whereas it turned out that he was charged only with unpremeditated murder. There is an intimation that he might have taken the stand had he known the charge's limitation.

The sixth amendment, the application of which we willingly assume here, provides that "the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation * * *." The murder charge against Corporal Harris accused him of willful, felonious, and unlawful killing of a named person "with malice aforethought * * * by shooting him with a carbine." The words "with malice aforethought", it is perhaps to be conceded, might or might not imply premeditation to an unadvised layman accused; this, of course, would also be true of much indictment language.

We feel, however, that this point embraces more technicality than substance. During the trial the accused was represented by a civilian lawyer and by a military lawyer. The charges had been served upon Harris on May 26, 1950, almost two months before the trial began. The investigating officer in his report stated, "At the outset of the investigation I informed the accused of the nature of the charges alleged against him * * *". At the close of the trial, after the findings of guilt had been announced but before sentence was determined, the defense specifically called "to the court's attention at this time, just to make sure the court realizes the fact,

that premeditation is not alleged in the specification." The response by the law member was, "The court will take that into consideration." It is thus obvious that the defense was aware, and indeed urged, that premeditation was not a factor. We thus must reject the argument that the defense might have been "handled in a different manner" had Harris known he was not being tried for premeditated murder. The district court's finding that there was no failure of the prosecution to inform Harris of the nature of the alleged offenses, 290 F.Supp. at 734, has adequate support in the record.

2. The absence of proper representation during the trial. This is the inevitable post-trial claim when the trial results in a conviction. See Slawek v. United States, 413 F.2d 957 (8 Cir. 1969); Cantrell v. United States, 413 F.2d 629 (8 Cir. 1969). The specifics here are that the trial took place all on one day from 1:55 p. m. to 11:30 p. m.; that the prosecution introduced 10 witnesses and many exhibits but the defense called only one witness who had already testified for the prosecution; that Harris did not testify; that there was no attempt to point out inconsistencies in the prosecution's case; that nothing in mitigation was offered; that no testimony was presented concerning conflicting physical evidence; that no objection was made "to the various procedures during the trial"; and that the alleged accomplice, Faber, was not advised of his rights before he testified against Harris.

We have reviewed the record of the military trial. We agree with Judge Becker, 290 F.Supp. at 734, that the evidence against Harris was "strong and convincing" and that "defense counsel were alert in protecting petitioner's rights * * *." There was cross-examination of prosecution witnesses including Faber. That the defense called no witness and that Harris did not testify surely of themselves have no constitutional import. When the prosecution rested, the defense requested and was

granted a short recess. When the hearing resumed, counsel stated that the defense had no witnesses to offer, that the rights of the accused had been explained to him, but that it was desirable that the law member do so again. The law member then addressed Harris and stated that he had the right to be sworn and take the stand as a witness; that, if he did this, his testimony would be weighed by the court just as the testimony of other witnesses; that he could be cross-examined about the whole subject of those offenses concerning which he testified; and that he could not be questioned about offenses concerning which he did not testify. He was asked whether he understood this. He answered affirmatively. He was asked again, "Are you sure?" He replied, "Yes, sir." The law member then stated to Harris that, if he did not wish to testify under oath, he might, without being sworn, say anything he desired as an unsworn statement, denying, explaining, or excusing any of the acts charged; that, as to such a statement, he would not be cross-examined; that such a statement would not be given the same weight by the court as sworn testimony but it would be considered and given the weight as it may seem to deserve; and that he had the right to present such a statement even if he chose to be sworn as a witness. Harris replied that he understood all this. The law member then told Harris that he might remain silent; that he had a right to do so; that, if he did so, it would not count against him in any way with the court; that it would not be considered as an admission; and that it could not be commented upon by the trial judge advocate in addressing the court. Harris said he understood this right. The law member then stated that Harris should "take time to consult with your counsel and then state to the court which you will do.—Now, please consult with your attorneys and then tell us which of these rights you wish to exercise." Harris stated, "I choose to remain silent, sir." The law member asked, "You choose to remain silent?" Harris replied, "Yes, sir."

In view of all this, we fail to see what we as an appellate court could now do without taking away from defense counsel the entire function which the law vests in such counsel.

The intimation as to the absence of evidence in mitigation is unconvincing. Our preceding recital indicates that the opportunity to speak was afforded. The record discloses a previous conviction by a summary court-martial; this may well have been a factor.

 3. The timing of the trial. This, of course, might have had an aspect of the unusual for a civil court. But even there a trial into the late evening is not unknown. It is not for us to say that the employment of such hours by a court-martial under occupied territory conditions is of itself constitutionally suspect. The record contains nothing whatsoever indicative of time pressure or of restriction or of weariness of accused or counsel. No complaint of the evening hour was uttered. The record reflects an orderly, fair, and efficient trial.

4. The Faber testimony. Faber was a German national, was the alleged accomplice, was an eye-witness, and was the one initially acquainted, as a former employee, with the residents of the German home where the offenses took place. The argument is that Faber was not advised of his rights before he testified. Reference is made to Article 24 which provides that no witness before a military court shall be compelled to incriminate himself. The absence of a cautionary instruction is suggested.

 The record is silent as to whether Faber was advised as to his rights. Wholly apart from the question of Harris' standing to assert this issue, it seems to us to be a matter for resolution upon objection at the trial. Our rule is clear that a conviction may rest even upon the uncorroborated testimony of an accomplice if that testimony is

not otherwise unsubstantial on its face. Kirschbaum v. United States, 407 F.2d 562, 565 (8 Cir. 1969); Patterson v. United States, 361 F.2d 632, 634 (8 Cir. 1966); Williams v. United States, 328 F.2d 256, 259 (8 Cir. 1964), cert. denied, 377 U.S. 969, 84 S.Ct. 1651, 12 L.Ed.2d 739. Faber's testimony was not unsubstantial on its face. Furthermore, the record is supportive, apart from Faber's testimony, of Harris' conviction. Certainly, under all the circumstances which prevailed here, the absence of a precautionary instruction, which was not requested anyway, Barnes v. United States, 347 F.2d 925, 928 (8 Cir. 1965), was not prejudicial.

Recent observations in United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), are pertinent. The Supreme Court there said,

"[The Manual for Courts-Martial] is a guidebook that summarizes the rules of evidence applied by court-martial review boards. * * * The paragraph regarding accomplice testimony is a statutory rule of evidence. Such rules do not customarily involve constitutional questions. * * *

"Rules of evidence are designed in the interests of fair trials. But unfairness in result is no sure measure of unconstitutionality. When we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions." 393 U.S. at 352, 89 S.Ct. at 532.

Counsel advises us that Harris has asked specifically that our attention be called to Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). This court is very much aware of the decision in *Bruton*. We are not here concerned, however, with testimony as to a codefendant's confession or admission implicating the defendant. Faber was indeed an accomplice but he took the stand and was subjected to cross-examination by the defense. *Bruton* has no pertinency. See Slawek v. United States, supra, 413 F.2d 957 (8 Cir. 1969), and Davis v. Sigler, 415 F.2d 1159 (8th Cir. 1969).

We make no attempt to evaluate this case, with its completely German situs, in the light of the recent decision in O'Callahan v. Parker, supra, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) (government's petition for rehearing pending), a case decided after the district court's ruling here. If that case has any conceivable pertinency for Harris, whose alleged offenses were committed in occupied territory and not, as in *O'Callahan,* in organized territory of the United States,[5] the issue should be presented in the first instance to the district court on a new application. Neither the petitioner nor the government has mentioned or briefed this point here and we are not inclined to consider it on our own initiative without the assistance which flows from adversary analysis and presentation.

Finally, we might be concerned with the identity of the present respondent. When Harris' application was filed, he was, as we have noted, at Springfield. Accordingly, the original respondent was the then Director of the Medical Center. Later, apparently in accord with Rule 25(d)(1), Fed.R. Civ.P., Dr. P. J. Ciccone, who had succeeded to the director-

---

5. In *O'Callahan,* even the 5-justice majority, in a concluding emphasis for its holding that charges of rape, housebreaking, and assault committed by a soldier in the then territory of Hawaii, were not triable by a court-martial, stated, "Civil courts were open. The offenses were committed within our territorial limits, not in the occupied zone of a foreign country." 395 U.S. at 273–274, 89 S.Ct. at 1691. We note, too, that the offenses in Humphrey v. Smith, supra, 336 U.S. 695, 69 S.Ct. 830, 93 L.Ed. 986 (1949), were committed in England (see Smith v. Hiatt, *supra,* 170 F.2d at 62), and yet the Supreme Court in *O'Callahan* did not question the holding in *Smith,* and, indeed, did not even cite it. The same may be said of Hiatt v. Brown, supra, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691 (1950), where the offense took place in Germany. See Reid v. Covert, 354 U.S. 1, 35 n. 63, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957).

ship of the Center, was properly substituted as party respondent.

According to his representations on papers in the file, Harris, upon his release, departed from the Western District of Missouri and is in New York. We have already noted the precedent of Jones v. Cunningham, supra, 371 U.S. 236, 243–244, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), and have held that this departure has not deprived the district court of jurisdiction and that, while on parole, Harris remains "in custody", within the meaning of 28 U.S.C. § 2241 (c). It may be desirable, however, for one of the parties to seek the substitution of a presently appropriate respondent whose identity is indicated by 18 U.S.C. § 4203(a). See Ex parte Endo, 323 U.S. 283, 304–307, 65 S.Ct. 208, 89 L.Ed. 243 (1944).

Affirmed.