Joseph Orby SMITH, Jr., Petitioner,

v.

**SECRETARY OF the NAVY,**
**Respondent.**

No. 19960–1.

United States District Court,
W. D. Missouri, W. D.

May 6, 1974.

Asst. Federal Public Defender Thomas M. Bradshaw, Kansas City, Mo., for petitioner.

Asst. U. S. Atty. Frederick O. Griffin, Jr., Kansas City, Mo., for respondent.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

On October 4, 1971, petitioner filed a motion for order of mandamus in the United States District Court for the District of Columbia in which, among other things, he alleged that:

On or about January 20, 1942, petitioner was taken before a court martial without counsel and induced to plead guilty under the assumption it wasn't a criminal defense [sic].

At no time from arrest to court martial was petitioner given advice or knowledge of what was occurring against [sic].

It can be determined from these allegations and from subsequent filings that petitioner basically is claiming that the circumstances of his conviction are controlled by the principles of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), that *O'Callahan* should be given retroactive effect, and that he did not knowingly and intelligently waive his right to counsel at his court-martial. The relief requested is

"to erase the conviction and sentence of petitioner and issue a General Discharge."

The United States Attorney for the District of Columbia, upon representation that the questions presented could be more conveniently tried in this Court, obtained an order directing the transfer of the case to this district. On May 2, 1972, we ordered that the Federal Public Defender be appointed to represent petitioner, that petitioner's deposition be taken and that thereafter the parties file statements as to whether any additional testimony or documentary evidence was necessary for the determination of the questions presented in the petitioner's "motion." That order has been complied with; respondent has submitted further documentary evidence and has stated of record that no further testimony is available. Both petitioner and respondent have filed proposed findings of fact and conclusions of law. The case is, therefore, in a proper posture for decision.

### I.

There is no dispute about the relevant facts in this case. On January 3, 1942 a summary court martial was convened by Ralph E. Forsyth, Major, U. S. Marine Corps, at Headquarters, Third Battalion, Tenth Marines, San Diego, California. At that time petitioner, then a private in the U. S. Marine Corps assigned to the Third Battalion, Tenth Marines, Second Marine Division, Fleet Marine Force at Camp Elliott, was charged with having committed three offenses while serving in the Marine Corps by specifications which stated:

(1) With, on or about November 29, 1941, in a public parking lot at the corner of Fourth and G Streets, in the City of San Diego, California, feloniously taking, stealing, and carrying away from the possession of one Holly Summer, a civilian living in said City, and said State, one automobile, to-wit: a Pontiac business coupe, bearing California license number 310338 of the value of $1,030, being the property of

the said Summer, and the accused did then and there appropriate same to his own use.

(2) With, some time between the dates of November 29, 1941, and December 12, 1941, at the parking lot across Highway No. 395 from said Camp Elliott, feloniously taking, stealing, and carrying away from the possession of one Andrew J. Coston, Private First Class, U. S. Marine Corps, one set of two California automobile license plates, No. 10U396, of the value of about $3.00, being the property of the said Coston, and accused did then and there appropriate same to his own use.

(3) With, on or about December 12, 1941, on First Street between Broadway and E Street, in the City of San Diego, California, in violation of the Vehicle Code of the State of California, as amended by the Legislature, 1941, providing in part as follows: "nor shall any person display upon a vehicle any registration card, license plate or permit not issued for such vehicle or not otherwise lawfully used thereon under this code," then and there, willfully, wrongfully, and unlawfully displaying upon an automobile, to-wit: a Pontiac business coupe, the aforesaid set of two California automobile license plates, No. 10U396, well knowing the said plates had not been issued for display on said automobile.

The record of the proceedings states that at the court martial "[t]he accused stated that he did not wish counsel." It further states that "[t]he requirements of section 356, Naval Courts and Boards, were complied with." Section 356, as it appeared on January 3, 1942, read as follows:

356. Accused entitled to counsel. —The accused is entitled to counsel as a right, and whenever practicable to counsel of his choice. The court can not properly deny him the assistance of a professional or other adviser. Enlisted men to be tried shall be advised particularly of their rights, and should be represented by counsel, if practicable, *unless they explicitly state in open court that they do not desire such assistance.* Should the accused state that he does not desire counsel he shall be informed by the court that counsel will be assigned him should he so desire, and he shall be advised to consult counsel before deciding to proceed with the case without counsel. A statement that this section has been complied with shall be entered upon the record of proceedings. It should be borne in mind, however, that the convening authority has no power to force counsel upon an accused unless the accused is mentally incompetent and thereby unable to look after his own interests. In such a case, when mental incompetency becomes known, the case becomes one for a doctor rather than a court. Failure to comply with request of accused that counsel be provided him is a fatal error. [Emphasis in text]

The record states that petitioner indicated that he had received on that date a copy of the specifications against him and that he had no objections to them. It also states that petitioner indicated that he was ready for trial.

The specifications were then read to the petitioner and petitioner pleaded guilty to each of the three counts. The record states that "[T]he accused was duly warned as to the effect of his plea and persisted therein." After a recess, petitioner was sentenced to a loss of pay, which was later remitted, and a bad conduct discharge, which was ordered executed on January 27, 1942.

At the time of his court martial, petitioner was just seventeen years old, had a sixth grade education and had no previous experience with criminal proceedings.

At the deposition of the petitioner, taken pursuant to this Court's order of May 2, 1972, petitioner stated several times that he did not recall any of the proceedings at the Summary Court Martial nor whether the entries made in the

Record of the Court Martial were correct.

## II.

■ Petitioner's first ground for his petition, that his conviction by court martial is invalid because his crimes were not service connected, must be rejected in light of the United States Supreme Court's decision in Gosa v. Mayden, 413 U.S. 665, 93 S.Ct. 2926, 37 L. Ed.2d 873 (1973).[1]

Petitioner's second ground for his requested relief, that he did not knowingly and intelligently waive his right to counsel, presents an extremely close question. It is not entirely clear from the cases but it does not seem to admit of much doubt that the Sixth Amendment guarantees the right of counsel to servicemen charged before a court martial. Harris v. Ciccone, 290 F.Supp. 729 (W.D.Mo. 1968), aff'd 417 F.2d 479 (8 Cir. 1969), cert. den. 397 U.S. 1078, 90 S.Ct. 1528, 25 L.Ed.2d 813 (1970), a case decided at the district court level by Chief Judge Becker, mentions a Sixth Amendment right to counsel. It concludes, however, that petitioner, in fact, received effective assistance of counsel at his court martial. The Court of Appeals opinion

also alludes to a Sixth Amendment right to counsel but also relies on the provision of the Uniform Code of Military Justice which requires counsel for general or special courts martial. The Court of Appeals held that the representation petitioner received at his court martial by a non-lawyer officer was adequate.

■ In any event, a serviceman is guaranteed a right to counsel by the Uniform Code of Military Justice, or in 1942 by the Articles of War of 1920, art. 17, ch. 227, Ch. 2, 41 Stat. 790 (1920). That provision guaranteed counsel for the accused in general and special courts martial only, but Section 356, Naval Courts and Boards, guaranteed counsel in all cases.

■ Given a right to counsel, it is axiomatic that a person may not be convicted of an offense without representation by counsel unless he has knowingly and intelligently waived his right to counsel. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and In re Gault,

1. Petitioner's position depends upon the retroactive application of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). We do not reach that question but it is certain that the relief petitioner seeks under the O'Callahan decision "could not withstand scrutiny by the present Supreme Court." Hooper v. Laird, 157 U.S.App.D.C. 195, 482 F.2d 784 (1973).

Until Gosa, supra, the Circuits were split on the question of the retroactivity of O'Callahan. The Supreme Court considered two of the several cases. In United States ex rel. Flemings v. Chafee, 458 F.2d 544 (2 Cir. 1972), the Court of Appeals for the Second Circuit held that O'Callahan must be applied retroactively and that, therefore, Fleming's 1944 conviction for auto theft by court martial must be set aside. In Gosa v. Mayden, 450 F.2d 753 (5 Cir. 1971), the Court of Appeals for the Fifth Circuit held that O'Callahan did not have retroactive effect and that Gosa's 1966 conviction for rape by court martial must stand.

In Gosa v. Mayden, the Supreme Court reversed Fleming and affirmed the lower

court's decision in Gosa. However, only the Chief Justice, Justice White and Justice Powell joined Justice Blackmun in the plurality opinion which declared that O'Callahan should not be applied retroactively. Justice Douglas concurred in the result on the ground that Gosa should be reargued to determine whether res judicata controls the disposition of the case. Justice Rehnquist concurred in the result on the ground that O'Callahan should be reversed, while expressing the opinion that the O'Callahan rule could not be given only prospective application. Justices Marshall, Brenner, and Stewart dissented from the plurality conclusion that O'Callahan should be applied prospectively only.

While the state of the law as to the retroactivity of O'Callahan is now somewhat confused, we can be reasonably certain that the Supreme Court would reject petitioner's reliance on O'Callahan, given the plurality opinion, together with Justice Rehnquist's position that O'Callahan should be reversed. See Hooper v. Laird, 157 U.S.App.D.C. 195, 482 F.2d 784 (1973).

387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)·. The Supreme Court most recently restated this principle in Argesinger v. Hamlin, 407 U.S. 25 at 37, 92 S.Ct. 2006 at 2012, 32 L.Ed.2d 530:

> We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.

The Supreme Court also concluded that:

> Beyond the problem of trials and appeals is that of the guilty plea . . . Counsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution. [407 U.S. at 34, 92 S.Ct. at 2011].

It is, of course, a matter of record that petitioner in this case did not have counsel at his court martial. The question that must be determined on review of this conviction, therefore, is whether petitioner did in fact knowingly and intelligently waive his right to counsel.

■ Petitioner, of course, in this collateral postconviction attack on his conviction, has the burden of proving by a preponderance of the evidence that the conviction, regular on its face, of a lawfully constituted court which had jurisdiction over the petitioner, is invalid because of an alleged violation of his constitutional rights. There is a corollary to this rule, however, which Chief Judge Becker in Harris v. Ciccone, 290 F.Supp. 729, 735 (W.D.Mo.1968) correctly stated as follows:

> This rule is qualified by a consistent and salutary subordinate rule that, where it appears that a petitioner convict has not been afforded the assistance of counsel guaranteed by the Constitution of the United States, there arises a strong presumption against waiver of counsel. This presumption shifts the burden of proving by convincing evidence that the peti-

tioner knowingly and voluntarily waived the right to counsel. Van Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309.

In Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), the Supreme Court of the United States held that the Supreme Court of Florida had erred in discharging a petition for writ of habeas corpus. The petitioner had challenged his state court conviction of serious non-capital offenses in a trial without counsel. The State Supreme Court held that if the record showed that petitioner did not have counsel, intelligent waiver of counsel will be presumed. The United States Supreme Court rejected that position, stating at 516, 82 S.Ct. at 890:

> Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence must show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.

See also Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); and Palmentere v. United States, 351 F.Supp. 167 (W.D.Mo.1972), and cases cited therein.

In this case the government has stipulated that it has no evidence to produce on this issue. Waiver, if any there be, must be gleaned from the record of the summary court martial.

■ The government does not argue that the rationale of *Carnley* is not applicable to this case but urges that the record is *not* silent with respect to waiver of counsel. The relevant entries in the Record of Proceedings of a Summary Court Martial, January 16, 1942, are as follows:

> The accused stated that he did not wish counsel. The requirements of Section 356, Naval Courts and Boards, were complied with.

It could not be argued that the first notation, standing alone, would suffice to carry the government's burden. A

mere notation that petitioner did not wish counsel does not show that petitioner understood his right to counsel and intelligently waived it. Even the fact that a defendant has been advised of his constitutional right to counsel prior to waiver has been held insufficient to show intelligent and knowing waiver. See Milignaro v. Dutton, 373 F.2d 729 (5 Cir. 1967).

In Craig v. Beto, 458 F.2d 1131 (5 Cir. 1972), the Court of Appeals held that notations on the docket sheet that Craig was advised of his right to counsel and that "defendant stated that he did not desire counsel . . ." were not sufficient to overcome the presumption of lack of waiver, and remanded the case with directions to hold a hearing to develop the full factual circumstances.

The second notation, however, when read with the first raises a substantial question as to whether the petitioner was in fact fully advised of his right to counsel so that he could intelligently waive that right. Section 356 states that an accused is entitled to counsel and that he should be represented by counsel unless he states in open court that he does not desire counsel. The section also requires the court to advise the accused "particularly" of his rights. Those rights not only include the right to counsel but the right to have counsel appointed. The section further requires that the court advise the accused, if he states that he does not desire counsel, to consult counsel before he proceeds without counsel.

■ If the section is fully complied with it would present a very close question as to whether the government had sustained its burden of proving that defendant knowingly and intelligently waived counsel. Certainly, a court on review cannot assume that the requirements of Section 356 were not complied with when the record states otherwise. On the other hand, a showing of intelligent waiver would seem to depend upon how the requirements of Section 356 were normally complied with at the time

of petitioner's court martial. More evidence is necessary, therefore, but this Court is not in a position to hear such evidence nor to grant ultimate relief because of our conclusion in part III of this opinion that petitioner has available remedies before the Judge Advocate General. We trust, however, that the Judge Advocate General on review will conduct an appropriate factual investigation to determine the type of procedures followed pursuant to Section 356 by Summary Courts-Martial of the Third Battalion, Tenth Marines, Second Marine Division, shortly after Pearl Harbor.

### III.

[8] In order for petitioner to maintain his mandamus action in this Court it is necessary that he first exhaust his available administrative remedies. Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950).

■ The government argues that the petitioner has a remedy under Article 69, Uniform Code of Military Justice, (10 U.S.C. § 869). That section provides that the finding or sentence, or both, in a case not reviewed by a Court of Military Review may be vacated or modified by the Judge Advocate General on the ground of newly discovered evidence; fraud on the court, lack of jurisdiction over the accused or the offense, or error prejudicial to the substantial rights of the accused. Petitioner's case has not been reviewed by the Court of Military Review, as provided in 10 U.S. C. § 866.

This provision for review by the Judge Advocate General, added to the Uniform Code of 1968, does offer possible relief to the petitioner in this case. The legislative history of the amendment, reported at 1968 U.S.Code Cong. and Admin.News at p. 4515, makes clear that it was intended to apply in cases such as this case:

It has been the experience of all the services in this class of cases, particularly with respect to summary court

martial cases and those special and general court martial cases not reviewable by a board of review, that some provision should be made for removing the fact of conviction, as well as granting other relief, in appropriate cases.

It does not matter that this form of relief was not available to petitioner at the time of his conviction. It is available to him now and he must exhaust it. Gusik v. Schilder, *supra*.

Petitioner has sought relief from the Board of Review, Discharges and Dismissals[2] on two occasions. He has never, however, raised the issue before another review body that he raises in this action. On August 18, 1950 petitioner's conviction was reviewed upon the broad claim of petitioner that he was intoxicated at the time and that he unwisely listened to the advice of older marines. The Board of Review concluded that the "separation with the character of discharge originally awarded was proper."

On March 28, 1951, the case was reopened by the Board of Review to reconsider its previous action. This time petitioner submitted an "affidavit of verification" which contained allegations that were intended to absolve petitioner of all guilt in connection with the crime for which he was convicted. The Board in this instance concluded as follows:

> In view of the questionable integrity of the petitioner and the author of the affidavit submitted as new evidence, the Board places no credence in petitioner's latest claim and concludes that the character of the discharge originally issued is proper.

Petitioner has not, therefore, exhausted his available administrative remedies as to his claim that he did not knowingly and intelligently waive his right to counsel. The case must, therefore, be dismissed without prejudice.

Accordingly, it is

Ordered that the motion for order of mandamus should be and is hereby dismissed without prejudice.

2. That Board of Review, however, was conducted pursuant to the Servicemen's Readjustment Act of 1944, § 301, ch. 268, § 301, 58 Stat. 286 (1944), as amended by 10 U.S. C. § 1553, and is not the board of review, now called the Court of Military Review, that is mentioned in 10 U.S.C. § 869. Review before the latter body, it appears from the statute, would foreclose further review by the Judge Advocate General.